Barry D. BRADY

v.

Kenneth S. APFEL, in his capacity as Commissioner of the Social Security Administration [1]

No. 1:95–CV–1075.

United States District Court, E.D. Texas, Beaumont Division.

March 16, 1999.

1. Kenneth Apfel was nominated for the position of Commissioner on May 23, 1997 and confirmed by the Senate on September 19, 1997. Kenneth Apfel succeeds John J. Callahan who was appointed acting Commissioner effective March 1, 1997. Pursuant to the last sentence of 405(g) of the Social Security Act, no further action need be taken. 42 U.S.C § 405(g) ("... any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

John Dudley Rutland, Beaumont, TX, for Barry Brady, plaintiff.

Steven MacArthur Mason, Asst. U.S., Attorney, Tyler, TX, for Shirley S. Chater, In her official capacity as Commissioner of Social Security, defendant.

## MEMORANDUM OPINION ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND OVERRULING PLAINTIFF'S OBJECTIONS

HEARTFIELD, District Judge.

Pending is plaintiff's "Objections to Report and Recommendation of United

States Magistrate Judge." The Court reviews *de novo* the portions of the magistrate judge's report to which objections are filed. *See Koetting v. Thompson,* 995 F.2d 37, 40 (5th Cir.1993).

## I. Proceedings

The magistrate judge's report sets forth a detailed chronology of the pertinent facts of this case. (Dockt.# 20.) Plaintiff filed his application for disability benefits on June 22, 1992, alleging disability since May 11, 1992 due to broken ribs, broken bones in his arm and shoulder, and chronic back pain. (Tr. at 28–31.) The Commissioner denied plaintiff's application initially and on reconsideration. Plaintiff then requested and received a hearing before the Administrative Law Judge ("ALJ"). (Tr. at 40, 41.) On November 18, 1993, plaintiff appeared, represented by counsel. (Tr. at 143.) The plaintiff was the only witness to testify at the hearing. (*Id.*) The ALJ denied plaintiff's application, finding that although plaintiff's impairments were severe, he retained the residual functional capacity of that greater than required to engage in a full range of light work activity but less than that required to engage in the full range of medium work activity. (Tr. at 20.)

Plaintiff then requested Appeals Council review of the ALJ's decision. The Appeals Council denied Brady's request. (Tr. at 4–5.) Having exhausted all administrative remedies, plaintiff filed this appeal in federal district court.

## II. The Magistrate Judge's Report and Recommendation

The magistrate judge concluded that there was no valid basis for remanding this action on due process grounds due to missing items in the record because the missing items are immaterial and of *de minimis* value. The magistrate judge reasoned that the 168 page administrative record is sufficiently complete to enable informed and meaningful judicial review.

Further, the magistrate judge concluded that substantial evidence supported the ALJ's finding that plaintiff could perform light work. Therefore, the magistrate judge recommended that the ALJ's decision be affirmed and the case dismissed.

## III. Plaintiff's Objections

Plaintiff makes two objections to the magistrate judge's Report and Recommendation. First, the plaintiff contends that the magistrate judge's conclusion that the missing documents were immaterial was a denial of due process. Next, plaintiff states that the ALJ failed to consider his subjective assertions of pain in deciding his disability claim. Both issues were fully addressed in the magistrate judge's Report and Recommendation.

As to plaintiff's first objection, plaintiff does not contend that the magistrate judge misapplied the law. Instead, plaintiff raises the same arguments considered by the magistrate judge in his Report and Recommendation. Independent review of the evidentiary record indicates that it was sufficiently complete for this court to exercise informed judicial review. As such, plaintiff's first objection is without merit.

As to plaintiff's second objection, a review of the record indicates that the ALJ considered the evidentiary record in concluding plaintiff possesses the residual functional capacity to perform light work. Specifically, the ALJ considered plaintiff's testimony and the opinion of his medical doctors. In addition, the ALJ evaluated plaintiff's contentions of subjective pain, and articulated sound reasons for his credibility determination. As such, plaintiff's contentions have received appropriate consideration as contemplated by the Social Security Act and regulations thereunder. *See* 42 U.S.C. §§ 405(b), (g); 20 C.F.R. § 404.914.

Having considered this matter *de novo,* it is

**ORDERED** that the magistrate judge's report and recommendation is **ADOPTED** and plaintiff's objections are **OVER-**

**RULED.** A separate order will be entered in accordance with the magistrate judge's recommendations.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Barry D. Brady brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security Administration's ("Commissioner") decision denying benefits. The Commissioner found that plaintiff was not disabled and denied his application for benefits.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) and Local Rules for the Assignment of Duties to United States Magistrate Judges. Jurisdiction is invoked pursuant to 42 U.S.C. § 405(g).

### II. PROCEDURAL BACKGROUND

Plaintiff filed his application for disability benefits on June 22, 1992, alleging disability since May 11, 1992 due to broken ribs, broken bones in his arm and shoulder, and chronic back pain. (Tr. at 28–31.) The Commissioner denied plaintiff's application initially and on reconsideration. Plaintiff then requested and received a hearing before the Administrative Law Judge ("ALJ"). (Tr. at 40, 41.) On November 18, 1993, plaintiff appeared, represented by counsel. (Tr. at 143.) The plaintiff was the only witness to testify at the hearing. (*Id.*) The ALJ denied plaintiff's application, finding that although plaintiff's impairments were severe, he retained the residual functional capacity of that greater than required to engage in a full range of light work activity but less than that required to engage in the full range of medium work activity. (Tr. at 20.)

Plaintiff then requested Appeals Council review of the ALJ's decision. The Appeals Council denied Brady's request. (Tr. at 4–5.) Having exhausted all administrative remedies, plaintiff filed this appeal in federal district court.

### III. JUDICIAL REVIEW

█ The court's role is to determine whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence. *See Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992).

Substantial evidence is more than a scintilla, but less than a preponderance, *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992), it requires evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983).) The evidence must be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939), *cited in* Harvey L. McCormick, Social Security Claims and Procedures § 672, at 193 & n. 1 (4th ed.1991).

█ To determine whether substantial evidence exists to support the ALJ's findings, the entire record must be scrutinized carefully. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983). The court in reviewing the record should not, however, proceed to

reweigh the evidence or review the ALJ's decision *de novo. Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989); *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987). Rather, it is for the Commissioner to weigh the evidence and to resolve any conflicts. *See Anthony v. Sullivan,* 954 F.2d at 295; *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir.1990). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co.,* 305 U.S. at 230, 59 S.Ct. at 217); *see also,* 42 U.S.C. § 405(g).

■ In determining whether substantial evidence supports the Commissioner's decision, four elements of proof are examined: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; and (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972)).

## IV. ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

■ Social security claimants bear a formidable burden of proof, "so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981). Proof of the existence of a serious disease or impairment alone does not establish a disability within the meaning of the Social Security Act. Thus, a showing of general disability is insufficient; a claimant must prove in addition inability to engage in any substantial gainful employment. *See Herridge v. Richardson,* 464 F.2d 198 (5th Cir.1972); *Ratliff v. Richardson,* 445 F.2d 440 (5th Cir.1971).

To qualify for disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act ("Act"). *See* 42 U.S.C. § 423(a). That is, the plaintiff must be under age 65, file an application for such benefits, and be under a disability as defined by the Act. *See* 42 U.S.C. §§ 416(I), 423(a). Those claiming disability insurance benefits under the Act have the burden of showing the existence of a disability. *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.1979), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *Rhynes v. Califano,* 586 F.2d 388 (5th Cir.1978); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.), *cert. denied,* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973).

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Establishment of a disability is thus a dual process. First, the claimant must prove that he suffers from a medically determinable impairment. 42 U.S.C. §§ 416(I)(1), 423(d)(1)(A). Second, the claimant must prove that his impairment or combination of impairments renders him unable to engage either in the work he previously performed or other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 416(I)(1), 423(d)(2).

## V. SEQUENTIAL EVALUATION PROCESS

■ The law requires, in every case, that the Commissioner determine whether

the claimant has a disability. *See Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The Commissioner developed a five-step sequential evaluation analysis to aid claimants in determining when they are disabled. *See* 20 C.F.R. § 404.1520. This procedure has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

■ First, the Commissioner ascertains whether the applicant is currently engaging in substantial gainful activity. If so, a finding of nondisability is entered and the inquiry ends. Second, the Commissioner determines if the applicant's impairment or combination of impairments is severe. That is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities. If not, the inquiry ends and a finding of nondisability is entered. Third, does the severe impairment equal or exceed those in the Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1? If so, disability is presumed and benefits are awarded. Fourth, does the impairment prevent the individual from engaging in his regular previous employment? If so, a *prima facie* case of disability is established and the burden going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987). Fifth, is there other work in the national economy which the applicant can perform? If the Commissioner has the burden (via step 4) and establishes that an applicant can perform alternative employment, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See Id.; Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986); 20 C.F.R. § 404.1520(a)–(f).

At the fifth step, the Commissioner engages in a two-pronged analysis: First, the Commissioner determines an applicant's "residual functional capacity." That is, the Commissioner decides whether the applicant, notwithstanding severe impairment, has the physical and mental ability to perform activities generally required in various categories of work.[2] Next, the Commissioner consults the "Medical Vocational Guidelines," commonly called "the grids."[3] The grids are a matrix of general findings, established by rule, as to whether work exists in the national economy that a person can perform, taking into account age, education, work experience and residual functional capacity. When individual factors for a particular applicant are compared to the general findings in the grids, the Commissioner determines whether alternative work that the particular applicant can perform exists in the national economy.

■ If the grids produce a finding that substantial jobs are not available, the application for benefits is approved. If the grids produce a finding that such jobs are available, the application is denied. Use of the grids does not violate the Social Security Act, and is judicially approved as a fair and just method of determining disability. *See Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (concluding that the use of occupational Grids is not violative of the Social Security Act and stating that "[t]his type of general factual issue may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing").

---

**2.** Residual functional capacity is defined as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). It has three components: physical abilities, mental abilities, and other impairments. *See* 20 C.F.R. § 404.1545(a).

**3.** *See* 20 C.F.R. Subpart P, Appendix 2 (1998).

## VI. FACTUAL BACKGROUND AND MEDICAL HISTORY

### A. The Medical Evidence Presented to the ALJ

The plaintiff is a thirty-six-year-old male with an eleventh grade education and previous work experience as a boiler-maker. (Tr. at 28, 57, 147.) On July 17, 1989, the plaintiff was involved in a car accident and was treated by Dr. Gunderson, M.D., an orthopedic surgeon with The Orthopedic Center in Lake Charles, Louisiana. (Tr. at 74–75.) In a letter dated August of 1989, Dr. Gunderson noted plaintiff's complaints of lower back pain and reported his impression that plaintiff suffered from a lumbar straining injury with nerve root irritation. (Tr. at 74–75.)

In May 1992, the plaintiff had a motorcycle accident that resulted in his hospitalization from May 4 through May 20, 1992. (Tr. at 79–120.) He sustained multiple rib fractures, contusions to his lungs and fractures to his collar-bone, leg and right arm. (Tr. at 80.) During the course of plaintiff's hospitalization, plaintiff's lung injuries showed a marked improvement with the clearing of all contusions. (Tr. at 80.) Plaintiff also received surgery to treat his fractured leg and right arm. (Id.)

Dr. Beaudry, M.D., an orthopedic surgeon of Park Place Hospital in Port Arthur, Texas, one of the plaintiff's treating physicians, wrote in a letter dated July 7, 1992 that the plaintiff had been "totally disabled" since the accident "and would continue to be disabled and unable to work for at least a year." (Tr. at 123.) In his treatment record of August 12, 1992, licensed physical therapist Bob Dark, L.P.T., with the Texas Gulf Orthopedic Group, noted that plaintiff's predominant complaint was "acute minimum upper arm pain" (Tr. at 121.)

On March 23, 1994, plaintiff underwent an orthopedic examination by Dr. Siy, M.D., a consulting orthopedic physician for the Social Security Administration. (Tr. at 135–37.) During his orthopedic examination by Dr. Siy, Brady complained of right arm pain and low back pain radiating to his left leg. (Tr. at 135.)

The consulting physician's examination revealed that the plaintiff was able to walk independently with a normal gait pattern. (Tr. at 136.) Dr. Siy, in his report, observed that the plaintiff did not list or limp while walking and was able to sit, stand and move about in a normal manner. (Id.)

Following physical examination of the spine, Dr. Siy reported that the plaintiff had normal curvature of the spine, symmetrical back musculatures and no scoliosis or spasm of the back area. (Id.) During the examination of plaintiff's back, he did not complain of any pain or tenderness. (Id.) Dr. Siy examined the plaintiff's upper extremities and found that except for mild atrophy of the right scapular muscles, the plaintiff's upper extremities were normal. (Id.) Dr. Siy assessed the plaintiff's physical ability to perform work-related activities and opined that plaintiff could lift up to 40 pounds occasionally and 20 to 30 pounds frequently. (Tr. at 139.)

### B. The Administrative Hearing

On November 11, 1993, the ALJ convened a hearing to consider plaintiff's application. Plaintiff appeared, represented by counsel. Plaintiff testified that he experienced pain in his lower back which radiated to his left leg. (Tr. at 150.) He stated that he had to lie down on the floor up to three times a day for 30 minutes to relieve his back pain and that any activity tended to worsen the pain that he experienced. (Tr. at 153.)

Further, plaintiff testified that he took two types of pain medication, Vicodin and Ibuprofen. (Tr. at 151.) He stated that the pain medication Vicodin makes him drowsy and for that reason he only takes one tablet per day on an infrequent basis. (Id.)

Plaintiff testified that he endures constant severe pain in his right arm and that he could not fully straighten it. (Tr. at

151, 157.) However, he stated that he was able to use his right arm for eating and drinking.

Plaintiff lives independently and is able to bathe and cook for himself. He maintains a driver's license and is able to drive to the store or to visit friends. He also stated that he could, with some pain, lift a gallon of milk with his right arm.

## C. Findings by the Administrative Law Judge

After considering the evidence of record, the ALJ concluded that plaintiff was not disabled. Specifically, the ALJ's findings were:

Step 1: The claimant has not engaged in substantial gainful activity since May 11, 1992. (Finding 2, Tr. at 19.)

Step 2: The claimant has severe impairments of chronic low back pain radiating to the left leg chest pains and hypertension. (Finding 3, Tr. at 19.)

Step 3: Claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Finding 3, Tr. at 25.)

Step 4: Claimant is unable to perform his past relevant work as a boiler maker or construction worker. (Finding 6, Tr. at 25.)

Step 5: Claimant has the residual functioning capacity to perform a limited range of medium work[4] and a full range of light work[5] without limitation. (Finding 12, Tr. at 26.)

4. Medium work is defined as involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567.

5. Light work is defined as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds, Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing. 20 C.F.R. § 404.1567.

6. A summary of plaintiff's objections is as follows: (1) Plaintiff was denied a complete

In making these findings, the ALJ concluded that plaintiff's subjective complaints of pain and the treating doctor's assessment of his total disability were not fully credible. The ALJ further determined that jobs existed in significant numbers in the national economy pursuant to "the grids," 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.17. This finding dictated the conclusion that plaintiff was not disabled. (Tr. at 20.)

## VII. PLAINTIFF'S POINTS OF ERROR

By local orders, this court's review is restricted to points of error specifically raised and discussed in briefs submitted after the administrative transcript is filed. *See* ("Notice To Parties In Social Security Appeals and Order" ¶¶ 4, 5 Docket Entry 8, May 22, 1995 and "Amended Order Directing Filing of Briefs" Docket Entry 20, June 19, 1996.) Plaintiff raises five points of error to the ALJ's decision.[6] However, for analytical purposes, plaintiff's five arguments are appropriately consolidated into two primary objections as follows: (1) the Commissioner failed to provide a complete transcript to the district court for purposes of this appeal as required under 42 U.S.C. § 405(g); and, (2) the ALJ's finding that plaintiff is not disabled is not supported by substantial evidence.

## VIII. ABSENCE OF COMPLETE ADMINISTRATIVE RECORD

Under 42 U.S.C. § 405(g), the Commissioner "shall file a certified copy of the

transcript; (2) The ALJ arbitrarily, capriciously, and unreasonably made a unilateral determination that plaintiff experienced no nonexertional impairments in direct contradiction to the evidence; (3) The ALJ improperly relied on the consulting physician's remarks; (4) Plaintiff was denied a fair and unbiased hearing by use of an "improper standard;" (5) The ALJ improperly applied the GRID to determine plaintiff's exertional limitations. (Pl.'s Mem. Brief in Supp. of Pl.'s Compl. for Judicial Rev., Dockt. No. 16.)

transcript of record including the evidence upon which the findings and decision complained of are based." *Id.* In the instant case, the plaintiff complains of an incomplete transcript. The Commissioner does not dispute this allegation and further concedes that nine documents were not included in the certified transcript. The specific missing documents are listed in the footnote.[7]

■ Undoubtedly, an applicant seeking judicial review of an adverse administrative decision denying benefits would be deprived of due process of law if the administrative agency were to wholly fail to produce a record for meaningful review. However, plaintiff cites no authority, nor does independent research reveal any, supporting the notion of a *per se* denial of due process of law when the administrative record is incomplete. Instead, the touchstone is whether the administrative record that does exist permits meaningful judicial review. *See Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 594, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) (reviewing court may remand if unable to exercise informed judicial review because of inadequate administrative record); *Torres v. Shalala*, 48 F.3d 887 (5th Cir.1995) (remand need not be ordered when evidence is missing but there is still ample evidence from which a determination may be made); *Fowler v. Califano*, 596 F.2d 600, 604 (3d Cir.1979) (remand appropriate when Social Security Administration lost entire application and denial of the plaintiff's claim "in view of the injustice that has been visited upon the claimant and the difficulty of proof existing through no fault of her own").

■ Here, the missing documents are immaterial to the ALJ's decision. The documents were procedural in nature and include only standard correspondence between the Commissioner and the plaintiff regarding the status of his disability claim. The ALJ does not rely upon any of the missing documents in his opinion. The plaintiff does not identify any missing component of his proof of disability. The Commissioner has produced a 168 page record of the proceedings that includes every item of evidence that the ALJ considered, including plaintiff's testimony and the evidence submitted by his treating physician. Therefore, it is abundantly clear that the missing documents are not material to the instant suit, and their presence is of *de minimis* value. Under these circumstances, no due process violation has occurred.

## IX. SUBSTANTIAL EVIDENCE

Under the sequential evaluation process described in Part V, the plaintiff established a prima facie case of disability. Since the Commissioner determined plaintiff was disabled at Step 5, it was the Commissioner's burden to rebut the plaintiff's prima facie case.

### A. Commissioner's Evidence of Plaintiff's Ability to Perform Alternative Work

To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements.

Plaintiff's points of error do not argue that the Commissioner failed to carry his Step 5 burden to rebut. Therefore, under the local order restricting consideration to points of error raised by the plaintiff, the

---

7. Exhibits 2, 3, 4, 5, 6, 7, 8, 9 and 11 were not available for inclusion in the transcript. These documents consisted of the following: plaintiff's application for supplemental security income, dated June 22, 1992; disability determinations Titles II and XVI dated September 1, 1992; a supplemental security income notice of disapproved claim dated Sep-

tember 3, 1992; disability determinations of Titles II and XVI dated December 17, 1992; and a supplemental security income notice of reconsideration dated December 18, 1992. A review of like documents indicates that they are one to two page standard forms that contain no material information related to specifics of plaintiff's disability.

court may assume that substantial evidence supports the ALJ's finding that plaintiff has the residual functional capacity to perform alternative work that exists substantially in the national economy.[8]

## B. Plaintiff's Proof of Inability to Perform Alternative Labor

Under the sequential evaluation process, once the Commissioner establishes via the grids that persons similarly situated to the applicant generally can perform alternative employment, the burden shifts back to the plaintiff to show specifically that he cannot perform that labor. Plaintiff's purported proof consists of his testimony regarding subjective complaints of pain and the report of a treating physician, Dr. Beaudry, both of whom the ALJ found not wholly credible. Thus, the final analytical exercise requires the court to consider plaintiff's remaining points of error that the ALJ did not give appropriate weight to this evidence. This requires the court to determine if the ALJ's credibility choices exceeded the limits of sound discretion.

### 1. Weight Given Treating Physician Reports

In the instant case, Dr. Beaudry, who treated plaintiff for injuries received as a result of a motorcycle accident, stated in a letter dated July 7, 1992, that plaintiff would be "disabled and unable to work for at least one year." (Tr. at 123.) Ordinarily, the opinion of plaintiff's treating physician is entitled to great weight. *See*

---

**8.** The ALJ concluded that plaintiff could do some medium work and a full range of light work. Such findings further imply that plaintiff is able to do less strenuous activities, such as sedentary work. 20 C.F.R. § 416.967.

Sedentary work is defined as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567.

*Greenspan v. Shalala,* 38 F.3d at 237. However, because treating physicians are often unfamiliar with the specific, stringent and "bordering on the unrealistic" definitions of disability in the Social Security Act, their opinions are far from conclusive. *See Barajas v. Heckler,* 738 F.2d 641, 645 (5th Cir.1984) ("statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act"); *see also* 20 C.F.R. § 416.927(e).

▮▮▮▮ The ALJ may reject the opinion of a treating physician where good cause exists. *See Leggett v. Chater,* 67 F.3d at 566. Good cause exists where the treating physician's statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, are unsupportable by evidence, or where the record contains contradictory opinions from other treating physicians. *See Milam v. Bowen,* 782 F.2d 1284, 1287 (5th Cir.1986). The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985).

Dr. Beaudry's letter is the only mention by any of plaintiff's doctors that his condition was disabling. Dr. Beaudry does not appear to be "leaning over backwards to support the application." However, Dr. Beaudry does not indicate that he used the

---

Substantial evidence clearly supports the ALJ's implicit finding that plaintiff can do sedentary work. Both Dr. Siy's and plaintiff's testimony support a finding that plaintiff can lift up to ten pounds at a time, sit, and walk and stand occasionally. The general fact findings of the Grids dictate that a person in plaintiff's age category (18–44) and education level (illiterate to high school completion), and work experience level (unskilled to semi-skilled) and residual functioning capacity (sedentary work) is not disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.23, 201.24, 201.25, 201.26, 201.27, 201.28.

term "disabled" in the Social Security Context. Further, even if accepted at full value, Dr. Beaudry's report provides no factual basis for finding that plaintiff will be unable to work permanently.

The ALJ determined that Dr. Beaudry's statement of plaintiff's temporary disability was contrary to the record as a whole, and also that his statement contained no objective findings of a work-limiting impairment. (Tr. at 18.) Thus, because Dr. Beaudry's diagnosis was conclusory and because it is impossible to determine whether the diagnosis conforms with the definition of disability under the Social Security Act, the ALJ had discretion to reject that opinion.

**2. Plaintiff's Subjective Assertions of Pain**

■ As noted earlier, plaintiff testified that he is in constant pain that worsens with any physical activity. *See supra* Section VI.B. Pain alone constitutes a disabling condition only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991); *Cullivan v. Shalala,* 886 F.Supp. 568, 577 (E.D.Tex. 1995). Moreover, allegations of pain must be corroborated by objective medical evidence. *See Wren,* 925 F.2d at 129; *Houston v. Sullivan,* 895 F.2d 1012, 1016 (5th Cir.1989).

■ When the ALJ determines that a claimant's physical impairment is not disabling, the ALJ must nevertheless consider a claimant's subjective complaints as well as objective medical evidence. *See Wingo v. Bowen,* 852 F.2d 827 (5th Cir. 1988); *Loya v. Heckler,* 707 F.2d 211, 214 (5th Cir.1983). The ALJ may analyze pain as a nonexertional limitation to the claimant's residual functional capacity. First, the claimant's pain must accompany a "medically determinable impairment that could reasonably be expected to produce ... symptoms such as pain." 20 C.F.R. § 404.1529(b). The ALJ then considers objective medical evidence in examining

the effect of pain on the claimant's ability to work, but the ALJ will not reject complaints of pain solely because medical evidence does not support those complaints. 20 C.F.R. § 404.1529(c)(2). In determining whether a claimant's pain constitutes a nonexertional. limitation, the ALJ considers the nature of the pain, factors that aggravate pain, medication and treatment, and restrictions which pain places on the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3). While an ALJ must consider a claimant's subjective complaints of pain, the ALJ is responsible for determining the disabling nature of the pain. *Carrier,* 944 F.2d at 247. The ALJ must weigh the evidence to determine whether the claimant's allegations of pain are credible.

■ When the ALJ finds a claimant's subjective complaints of pain to be not credible despite uncontroverted medical evidence which shows a basis for the pain, the ALJ must articulate reasons for rejecting the claimant's subjective complaints. *See Falco,* 27 F.3d at 163; *Abshire v. Bowen,* 848 F.2d 638, 642 (5th Cir.1988).

■ Here, the ALJ found that the plaintiff suffers from pain that affects his ability to work. However, the ALJ found that the pain did not prevent plaintiff from doing some medium work and a full range of light work. In addition, "if someone can do light work, we determine that he or she can also do sedentary work." 20 C.F.R. § 416.967. Thus, the ALJ expressly stated that he did not consider plaintiff's testimony regarding the disabling nature of his pain to be wholly credible.

When making this credibility determination, the ALJ cited the objective medical evidence from Dr. Siy, the consulting physician, who examined the plaintiff following the administrative hearing, and plaintiff's own testimony. Dr. Siy reported that plaintiff's lumbar spine showed normal primary and secondary curvatures, no scoliosis and symmetrical back musculatures. (Tr. at 16.) Plaintiff's cervical, thoracic,

and lumbosacral spinal ranges of motion were normal. (*Id.*) Dr. Siy stated that plaintiff was independently ambulatory with a normal gait pattern and that during his examination no listing or limping was observed. (*Id.*) Also, Dr. Siy's examination of plaintiff's upper extremities showed no evidence of swelling or inflammation. (*Id.*) Dr. Siy did diagnose plaintiff as having chronic low back pain. (*Id.*) However, in a Medical Assessment of Ability to do Work–Related Activities, Dr. Siy opined that claimant could lift up to 40 pounds occasionally and 20 to 30 pounds frequently during an 8–hour workday and that plaintiff's ability to sit, stand and walk was not impaired by his chronic lower back pain. (*Id.*)

Regarding plaintiff's testimony, the ALJ stated that the plaintiff is "independent in his activities of daily living and ambulation." (*Id.*) Plaintiff is able to walk without limitation, drive, visit with friends, lift up to a gallon of milk, and bathe himself. The ALJ concluded that plaintiff's ability to participate in these activities does not support plaintiff's assertions of debilitating pain.

Thus, the ALJ adequately articulated sound reasons for concluding that "the credible medical evidence does not show an underlying medical condition so severe as to be productive of symptoms that would preclude the performance of sedentary work activities." (Tr. at 19.)

▆▆▆▆ In the absence of uncontroverted medical evidence which shows a basis for a claimant's pain, the ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Falco*, 27 F.3d at 163–164; *Villa*, 895 F.2d at 1024; *James v. Bowen*, 793 F.2d 702, 706 (5th Cir.1986); *Espino*, 900 F.Supp. at 100. The record indicates that the ALJ weighed all available evidence to conclude that the evidence does not support a finding that the plaintiff "would be precluded from engaging in work activity in a range between light and medium exertional levels." (Tr.

at 17.) The ALJ concluded that plaintiff's complaints of pain were "not credible to the extent alleged" because the medical findings did "not reveal one or more underlying conditions which could be expected to produce the intensity and persistence of the pain, as well as dizziness contended by the claimant." (*Id.*)

Because the ALJ adequately articulated the rationale behind his unfavorable assessment of plaintiff's credibility and the record contains substantial evidence to support his reasoning, the finding that plaintiff's pain is not disabling must be upheld. *See Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir.1983).

## X. SUMMARY AND CONCLUSION

There is no valid basis for remanding this action on due process grounds due to missing items in the record. The missing items are immaterial and of *de minimis* value. The 168 page administrative record is sufficiently complete to enable informed and meaningful judicial review.

Regarding the merits of plaintiff's application, the ALJ followed the 5 step sequential evaluation process required under the Commissioner's regulations and uniformly approved by courts. The ALJ found that plaintiff established a prima facie case of disability, but that plaintiff had the residual functional capacity to perform alternative work available in the national economy. Substantial evidence supports that finding, and application of the grids dictates a conclusion of no disability within the meaning of the Social Security Act.

The ALJ acted within the bounds of sound discretion in finding the plaintiff's testimony regarding the disabling nature of his pain not wholly credible. The ALJ articulated supportable reasons for this credibility determination, and is therefore entitled to judicial deference. Similarly, the ALJ acted within his discretion in rejecting the report of the treating physician. That report, at best, would not have

supported a finding of permanent disability.

## XI. RECOMMENDATION

The decision of the ALJ is supported by the substantial evidence and should be affirmed and the case dismissed.

## XII. OBJECTIONS

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendation contained in this report within 10 days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations.