# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60304
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 22, 2016

Lyle W. Cayce
Clerk

CEDRIC MCCASKILL,

Plaintiff - Appellant

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES,
SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CV-24

Before DAVIS, JONES, and GRAVES, Circuit Judges.

PER CURIAM: *

Plaintiff-Appellant Cedric McCaskill ("Appellant") applied for disability benefits, but his claim was ultimately denied by the Administrative Law Judge (the "ALJ") and the Appeals Council. Appellant then filed a complaint in the district court. The Magistrate Judge (the "Magistrate") recommended that the Commissioner's decision be affirmed. Appellant objected. The district court

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60304

overruled Appellant's objection and adopted the Magistrate's Report and Recommendation. Appellant timely appealed to this Court. After reviewing the record and the applicable law, we find no reversible error and **AFFIRM**.

## FACTUAL BACKGROUND

Appellant filed for disability benefits in 2009 alleging back problems and a hearing deficit on his left side. After his application was initially denied by the ALJ, the Appeals Council remanded for further administrative proceedings, particularly, the Appeals Council directed the ALJ to obtain a consultative mental examination that included an IQ score and a medical statement of Appellant's abilities. On remand, the ALJ obtained the consultative mental evaluation, and an IQ score from Dr. Patsy Zakaras ("Dr. Zakaras"). After reviewing the new information and the previously established record, the ALJ again denied Appellant benefits because Appellant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 for presumptive disability. Specifically, Appellant's claim to the Listed Condition of intellectual disability under 12.05 was rejected. Appellant once more sought review from the Appeals Council, but was denied. The ALJ's decision was ultimately affirmed by the district court in 2015.

## DISCUSSION

The Commissioner's decision is granted great deference. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

> Our review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. In applying the substantial evidence standard, the court scrutinizes the record to

determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's. Conflicts of evidence are for the Commissioner, not the courts, to resolve. If the Commissioner's fact findings are supported by substantial evidence, they are conclusive.

*Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (internal citations and quotations omitted).

The governing regulations set forth a five-step sequential evaluation process for determining disability: (1) whether the claimant is working; (2) whether the claimant has a medically severe impairment; (3) whether the impairment is severe enough to meet the criteria of a listed impairment; (4) whether the impairment prevents the claimant from returning to past relevant work; and (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant has the burden of proof at the first four steps of the process. *See Leggett,* 67 F.3d at 564. At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *See Perez v. Heckler*, 777 F.2d 298, 300-301 (5th Cir. 1985). If the Commissioner meets that burden, then the burden shifts back to the claimant to prove that he cannot perform the other work. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

Appellant raises six issues for review: (1) whether the ALJ complied with the Appeal's Council order to obtain a consultative mental evaluation, including Appellant's IQ score; (2) whether the evidence supported the ALJ's finding that Appellant did not meet the criteria of a listed impairment under 20 C.F.R. Ch. III, Pt. 404 12.05 (B), or 12.05 (C); (3) whether the Magistrate

erred in granting a protective order preventing Appellant from deposing Dr. Zakaras about the IQ score on her report; (4) whether the ALJ properly considered Dr. Zakaras's report; (5) whether the district court erred in adopting the Magistrate's decision and affirming the ALJ; (6) whether Appellant's due process rights were violated. We address each issue below.

    *1. The Appeals Council's order.*

After the case was remanded, the ALJ ordered a consultative mental examination, including an IQ score. After receiving the evaluation results, the ALJ wrote to psychologists Dr. Zakaras and Dr. Fontenelle inquiring about the validity of the IQ scores in their respective reports. Dr. Fontenelle responded, validating Appellant's full scale IQ score of 69.[1] There is no record evidence that Dr. Zakaras responded. Appellant's IQ score in Zakaras's report is 59.

Appellant contends that the validity of the IQ score on Dr. Zakaras's reports was never established. Consequently, Appellant argues that the ALJ did not comply with the Appeals Council's order.

We are unpersuaded by Appellant's argument. It is undisputed that the ALJ obtained a consultative evaluation and an IQ score. Appellant focuses his appeal on the validity, or lack of thereof, of his IQ score. But there is nothing in the ALJ's final decision indicating that the IQ scores from Dr. Zakaras's or Dr. Fontenelle's reports were invalid. In fact, the ALJ considered both IQ scores, as well as Appellant's special education history, in his thorough analysis of the evidence. The ALJ ultimately denied Appellant's disability application because, as discussed below, Appellant failed to meet the required adaptive functioning deficit—not because of his IQ scores.[2] Without doubt, the

---

[1] This score was available prior to the Appeals Council's remand order.

[2] *See, e.g.*, *Vaughn v, Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (affirming ALJ's finding of no disability as supported by substantial evidence due in part to the fact that "the record reflects that [the claimant] was able to, and did, work for several years while suffering from

No. 15-60304

ALJ complied with the Appeals Council's order to obtain a consultative mental evaluation and an IQ score.

### 2. *Disability criteria under 12.05.*

The regulations clearly state that the IQ test score alone does not establish intellectual disability as a Listed impairment. Appellant must demonstrate that his impairment meets *all* the specified medical criteria of the listing, rather than merely some of the criteria. Before proceeding any further in the disability eligibility analysis, Appellant must satisfy the diagnostic definition of intellectual disability—he must demonstrate "significantly subaverage general intellectual functioning *with* deficits in adaptive functioning initially manifested before age 22." *Randall v. Astrue*, 570 F.3d 651, 656-662 (5th Cir. 2009) (emphasis added); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Therefore, satisfying the intellectual disability definition of 12.05 is a prerequisite to considering 12.05 (A), (B), (C), or (D).[3]

---

ailments she now asserts are disabling"); *Muse v. Sullivan*, 925 F.2d at 789-90 (finding substantial evidence supported the ALJ's finding that claimant was not mentally disabled notwithstanding an IQ score of 58 based, in part, on the fact that "[t]here was no evidence in the record that [the claimant] had ever been fired from a job because he could not comprehend, remember, or carry out the mental . . . duties" and thus the claimant's "work experience belie[d] that he was [mentally disabled]").

[3] 12.05 Intellectual Disability: Intellectual Disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR B. A valid verbal, performance, or full scale IQ of 59 or less; OR C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or

No. 15-60304

Part of the disability definition is the adaptive functioning prong. In *Heller v. Doe*, 509 U.S. 312, 329 (1993), the Court described "adaptive functioning" as a person's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." Adaptive activities include cleaning, shopping, cooking, maintaining a residence, taking public transportation, and caring appropriately for grooming and hygiene. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1200(C)(1).

Here, the record contains sufficient evidence supporting the ALJ's finding that Appellant failed to meet the required adaptive functioning prong. Appellant's own testimony reflects that he can clean, mow his yard, live by himself, do his own housekeeping, shopping, laundry, cooking (or get his own meals), drive, and attend to his own grooming and hygiene.

Dr. Zakaras's evaluation also revealed that Appellant can perform routine tasks, follow and understand directions, cope with work stress, and respond to supervision; he has fairly good remote memory, his thoughts are logical and goal oriented, and that he has not been in counseling. Dr. Zakaras also diagnosed Appellant with a learning disorder, *not* an intellectual disability.

In addition, Dr. Fontenelle's evaluation found that Appellant showed relative strength in his social adaptive independent living. This evidence, coupled with Appellant's fifteen-year career as a longshoreman, supports that Appellant does not have adaptive deficits with an onset before age twenty-two.

---

4. Repeated episodes of decompensation, each of extended duration. *Greenspan*, 38 F.3d 232, 236 (5th Cir. 1994).

No. 15-60304

But Appellant argues that the ALJ conclusively found that Appellant met the adaptive deficit requirement.  Appellant relies on a statement the ALJ made at a hearing on remand.   After reviewing primarily the evidence concerning Appellant's IQ score, the ALJ stated that he thought Appellant met the adaptive deficit requisite.   Therefore, Appellant contends that the only issue to be determined on remand was whether the IQ scores were valid.

In denying Appellant relief, the district court characterized the ALJ's statement as a comment rather than a finding of fact.[4]  The district court also pointed to the lack of legal authority construing an ALJ's comments at a hearing as a conclusive and binding finding of fact.  *See P.C.S. v. U.S. Comm'r Soc. Sec. Admin.*, 2011 WL 4499368 at *1 (W.D. La. Sept. 27, 2011) (holding that an ALJ's written decision, which provides findings of fact and the reasons for denying a claim, controls over statements that the ALJ made at the administrative hearing).

The Commissioner asserts that any error based on the ALJ's statement is harmless because Appellant has not proven his adaptive deficits.  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (procedural perfection in an administrative procedure is not required).

We agree with the district court and Appellee.   It is improper to characterize the ALJ's comment at the remand hearing as a finding of fact. The comment was made after the ALJ reviewed primarily the IQ related evidence, not the entire record.   Not only should the written decision control over the ALJ's oral statement but here the record clearly shows this was a premature impression because the ALJ subsequently issued a detailed written decision based on *all* the record evidence.

---

[4] A district court's findings of fact are reviewed for clear error and legal conclusions are reviewed de novo.  *Aransas Project v. Shaw*, 775 F.3d 641, 653 (5th Cir. 2014).

No. 15-60304

Additionally, the alleged error was harmless, as substantial evidence supports the conclusion that Appellant did not meet the adaptive deficit requirement of 12.05. Any evidence to the contrary cited by Appellant is insufficient to warrant reversal on the present record. *See Perez*, 415 F.3d at 461 (conflicts of evidence are for the Commissioner, not the courts, to decide).[5] Appellant failed to prove the disability eligibility criteria under 12.05.

### 3. *The sufficiency of the record and the protective order.*

Appellant also argues that the ALJ made a decision based on an incomplete record because no IQ validating statement was obtained from Dr. Zakaras. Appellee contends that the record evidence is sufficient to support the ALJ's decision. We agree with Appellee.

> The Fifth Circuit has determined that trial courts should not reverse or remand determinations because documents are missing where the record contains enough evidence for the ALJ to make a determination. *See Torres,* 48 F.3d at 893-94 (claimant failed to demonstrate that lost evidence affected the ALJ's ability to render an informed decision); *see also Brady v. Apfel,* 41 F. Supp. 2d 659, 668 (E.D. Tex. 1999) (rejecting argument that incomplete administrative record is *per se* denial of due process; affirming denial where documents would be of *de minimis* value and were irrelevant); *Hawkins v. Barnhart,* 356 F. Supp. 2d 359, 365-66 (S.D. N.Y. 2005) (upholding denial of benefits where ALJ's decision supported by substantial evidence even absent missing documents). Agency records furnished to a court are adequate for due process purposes unless they do not permit meaningful judicial review of the adjudication process. *Brady,* 41 F. Supp. 2d at 668 (citing *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 594, 100 S. Ct. 1889, 64 L.Ed.2d 525 (1980); *Torres,* 48 F.3d at 887).

---

[5] In the end, the ALJ concluded that Appellant could perform light work available in significant numbers in the national economy and Appellant failed to provide evidence rebutting the ALJ's determination. *See Carey*, 230 F.3d at 146.

*Quintanilla v. Astrue*, 619 F. Supp. 2d 306, 325 (S.D. Tex. 2008).   Here, as detailed above, the 659 page record provides ample evidence that Appellant did not meet the adaptive deficiency requirement of 12.05  Zakaras's missing statement validating Appellant's IQ score is of no consequence, but in any event, nothing in the ALJ's order or even in Zakaras's own report suggests that Appellant's IQ score is incorrect.

The sufficiency of the record also obviated the need for a status conference or for the deposition of Dr. Zakaras, which Appellant requested in order to complete the record.[6]  Accordingly, the Magistrate properly granted a protective order preventing a deposition of Dr. Zakaras.

### 4. *The psychological reports.*

Appellant also argues that he was prejudiced because the ALJ selectively relied on portions of Dr. Zakaras's report but discounted evidence in the same report supporting that Appellant's alleged adaptive deficit was present before age twenty- two.  Appellant also contends that the ALJ improperly relied on a psychological report from Dr. Sharon Scales

In rebuttal, Appellee contends that the ALJ considered Dr. Zakaras's entire report and that Appellant waived any objection to the ALJ's reliance on Dr. Scales's report by not raising the issue in the district court.  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

Appellant's first contention does not warrant reversal because conflicts of evidence are for the Commissioner, not the courts, to decide.  *Perez*, 415 F.3d at 461.  It is not the job of this panel to reweigh evidence, or substitute its judgment for the Commissioner's.  *Id.*  Even assuming the presence of some

---

[6] Evidentiary rulings are reviewed under a deferential abuse of discretion standard. *Aransas Project*, 775 F.3d at 655.

contrary evidence, the record contains substantial evidence to support the ALJ's findings.

Second, Appellant waived any issue concerning Dr. Scales's report by not raising it in the district court. Appellant does not establish any extraordinary circumstances for this panel to make an exception. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999).

### 5. *The district court's decision.*

Appellant next contends that the district court applied the incorrect legal standard, 12.05(D), in adopting the Magistrate's Report and Recommendation. As Appellee points out, however, nothing in the district court's order indicates any reliance on 12.05 (D). Moreover, the relevant issue is whether there is substantial evidence supporting the ALJ's decision, and we have already concluded that there is.

### 6. *Due process.*

Last, Appellant asks for remand or reversal based on the errors he alleges that the ALJ and the district court committed. In the absence of reversible error, we deny such relief. Alternatively, he seeks remand to file a brief before the Appeals Council on his second appeal. We also deny this request as nothing prevented Appellant from briefing his case to the Appeals Council. Appellant had the opportunity to brief his points of contention in the district court.

For these reasons, the district court's judgment is **AFFIRMED**.