Lula M. HAWKINS, Plaintiff,

v.

Jo Anne B. BARNHART, Defendant.

No. 00CIV.8689(RMB)(RLE).

United States District Court, S.D. New York.

Feb. 15, 2005.

---

11. *Travelers Insurance Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994).

12. Defendant now concedes as much.

Charles E. Binder, Binder & Binder, New York City.

Lorraine S. Novinski, Assistant United States Attorney, Office of the United States Attorney.

## REPORT AND RECOMMENDATION

ELLIS, United States Magistrate Judge.

## To the HONORABLE RICHARD M. BERMAN, U.S.D.J.:

### I. INTRODUCTION

This Social Security matter was referred to the undersigned on August 18, 2003, by the Honorable Richard M. Berman. Plaintiff, Lula M. Hawkins ("Hawkins"), seeks review of the Commissioner of Social Security's ("Commissioner") determination that she is not disabled within the meaning of the Social Security Act ("the Act"), and is therefore ineligible for disability insurance and Supplemental Security Income ("SSI") benefits.

On July 16, 2003, Hawkins commenced this action to obtain judicial review of the Commissioner's decision. Hawkins and the Commissioner subsequently cross-moved for judgments on the pleadings and for summary judgment. For the reasons set forth below, I recommend that the defendant's cross-motion be **GRANTED** and that plaintiff's cross-motion be **DENIED**.

### II. FACTS

On July 5, 1995, Hawkins filed an application with the Social Security Administration ("SSA") for disability and disability insurance, pursuant to Title II of the Act, 42 U.S.C.A. § 401, and an application for SSI, pursuant to Title XVI of the Act. 42 U.S.C.A. § 1382. Transcript of Administrative Proceedings ("Tr.") at 18. Hawkins claimed that she had been disabled since July 15, 1988. *Id.* Both applications were denied, and Hawkins's request for a hearing before an Administrative Law Judge ("ALJ") was granted. *Id.* Hawkins knowingly waived her right to representation, appeared *pro se*, and testified at the July 17, 1997 hearing. *Id.*

The ALJ determined that Hawkins met the Title II requirements for insured status from July 15, 1988, the claimed disability onset date, through to December 31, 1993. Tr. at 25. However, the ALJ discontinued Hawkins's social security and security income benefits after December 1993, finding that she was not disabled within the meaning of the Act from July 15, 1988 to April 22, 1998, the date of the ALJ's decision. Tr. at 19, 25–27. Hawkins retained counsel and filed for review of the decision. Tr. at 11. SSA denied her request on September 28, 2000, and the ALJ decision became the final decision of the Commissioner. Tr. at 4–5. Subsequently, Hawkins filed the present action.

Hawkins was born on January 13, 1945, and was fifty years old when she filed her applications for disability and SSI benefits. Tr. at 40, 62. She has a high school education and can read and write English. Tr. at 48–49, 112. Hawkins's only past relevant work was as a supermarket cashier from 1978 to July 1988. Tr. at 49. Her duties included operating the cash register, bagging groceries, placing returned items to their respective shelves, and supervising other employees. Tr. at 49, 112. Hawkins testified that this position required her to lift a maximum of twenty pounds and that she worked standing up. Tr. at 49–50. She also indicated in her disability report, dated July 25, 1995, that her employment required her to carry food items a distance of approximately two feet. Tr. at 113.

Hawkins has not worked since July 15, 1988. Tr. at 38. She claims that she cannot work because of impairments, including epilepsy, diabetes, and hypothyroidism. Tr. at 55. She has been treated by a number of physicians and is on medications to treat these ailments. Tr. at 45–46, 59–60, 162, 163–64, 196–97, 200, 223. However, Hawkins also stated that, prior to 1995, she was able to walk a mile-and-a-half, had no difficulty standing, and could

lift and carry an estimated twenty to twenty-five pounds. Tr. at 54–55. She further stated that she did not return to her job as a cashier because she "was helping with [her] grandchildren." Tr. at 55.

According to the medical history, Hawkins was treated at New York Medical Group since 1988, principally by her treating physician, Christopher Enu, M.D. Tr. at 124–94. The record from New York Medical Group for February 24, 1988, through to September 19, 1995, indicates that Hawkins was examined a number of times, and treated for allergic rhinitis, bodily aches and pains, headaches, asthma, elevated cholesterol, and one episode in February 1988, where she passed out, but seizure was not involved. Tr. at 126–57.

On January 21, 1995, Hawkins was admitted into the emergency room at Our Lady of Mercy Hospital for complaints of shortness of breath, numbness on her left side, and epigastric tightness. Tr. at 196–98. However, the physician found no shortness of breath and no sensory or motor deficit. Tr. at 197. The physician believed Hawkins had menopause syndrome. *Id.*

In February 1995, Hawkins complained of chronic headaches on the left side and blurry vision, but a vision examination in March 1995 reported normal vision. Tr. at 159–60. In May 1995, Hawkins reported to Dr. Enu that she believed she had experienced a grand mal seizure. Tr. at 161. Dr. Enu prescribed 100 milligrams of an anti-epileptic drug, Dilantin, three times a day. Tr. at 162. In June 1995, Dr. Enu reported no symptoms. Tr. at 163.

In July 1995, Dr. Enu examined Hawkins for an abnormal mammogram, which subsequently yielded normal test results. Tr. at 164–65. He prescribed diabetes medications. Tr. at 165. In a letter dated July 13, 1995, he confirmed that he had treated Hawkins for epilepsy, chronic bronchitis, and diabetes mellitus, and that he had prescribed medications including Dilantin, Proventil, and Glucotrol. Tr. at 200. On July 27, 1995, Dr. Enu reported that Hawkins's cholesterol levels were elevated due to prednisone which the doctor had prescribed to her since 1992, initially to treat reported bronchospasms. Tr. at 142. Dr. Enu subsequently prescribed Pravachol with Glucotrol and Fioricet. Tr. at 165. On July 29, 1995, Hawkins's cholesterol was 368 mg/dL.,[1] compared to 366 mg/dL. in January 1995, tr. at 176–77, 324 mg/dL. in May 1995, tr. at 172–73, and 261 mg/dL. in July 1990. Tr. at 137. Her glucose was 233 mg/dL.,[2] tr. at 176–77, compared to 132 mg/dL. in June 1995, tr. at 170, and 150 mg/dL. in May 1995. Tr. at 172–73. She remained on Dilantin, and Dr. Enu prescribed a decreased dosage of Prednisone. Tr. at 163. On July 10, 1995, Hawkins's EEG results were normal. Tr. at 179.

In August 1995, Hawkins was seen for a bee bite. Tr. at 165. She was diagnosed with a multinodular goiter, and her medication was adjusted. Tr. at 166, 180. On September 19, 1995, Hawkins reported no specific symptoms, and her medications were continued. Tr. at 167.

In a report dated September 25, 1995, Dr. Enu diagnosed Hawkins with diabetes mellitus, chronic obstructive pulmonary

---

1. Plaintiff asserts that normal cholesterol levels fall below 200 mg/dL, between 200–239 mg/dL. is borderline, and levels above 240 mg/dL. are considered "high risk." *See* Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), at 3 n. 11; *see also* DORLAND'S ILLUS-

TRATED MEDICAL DICTIONARY app. 7 at 1934 (28th Ed.1994).

2. Plaintiff asserts that normal glucose levels fall between 50–115 mg/dL. *See* Pl. Mem., at 6 n. 25; *see also* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, *supra* note 1, at 1934.

disease, hypercholesterolemia (high cholesterol), and seizures. Tr. at 223. Hawkins's symptoms were occasional aches and pains and occasional seizures. Tr. at 223. Dr. Enu indicated that Hawkins could not lift more than one pound, but that she could stand or walk for less than two hours a day, and could sit for up to six hours a day. Tr. at 227.

Hawkins was examined at the Human Resources Administration ("HRA") on July 24, 1995. Tr. at 202–06. The physician there confirmed that she had diabetes mellitus, chronic bronchitis, epilepsy, elevated cholesterol, and indicated that she was temporarily disabled for six months. Tr. at 204.

A consulting physician from Diagnostic Health Services, Dr. E.B. Balinberg examined Hawkins on August 16, 1995. Tr. at 211–18. Dr. Balinberg indicated that Hawkins had 20/20 vision in her right eye and 20/25 vision in the left; her blood pressure was 130/70 while seated and 135/70 while standing; her lungs were clear with no wheezing; her pulmonary functioning was within normal limits; and her chest x-ray was "negative." Tr. at 211–12, 215–18. He also reported that her gait, manipulation, and muscle strength throughout all extremities was normal. Tr. at 212. Additionally, he indicated a history of seizure disorder, diabetes mellitus without clinical evidence of involvement of the target organs, and bronchial asthma. Tr. at 213. Overall, Dr. Balinberg reported that Hawkins had some limitations primarily with respect to lifting, carrying, pushing, and pulling heavy loads, running, walking fast, and climbing many stairs. Tr. at 213. He also advised that she avoid respiratory irritants. *Id.*

Consulting ophthalmologist, Marvin Gillman, M.D., examined Hawkins on August 17, 1995. Tr. at 219–220. Dr. Gillman diagnosed Hawkins with slight myopia, presbyopia, and diabetes without evidence of diabetic retinopathy. Tr. at 220. However, there was no indication that she suffered from any ocular or visual deficiency. *Id.*

Before the ALJ, Hawkins reported that she continued to see Dr. Enu on a regular basis. Tr. at 39. The ALJ had Hawkins's complete medical records from New York Medical Group, her primary care hospital, from 1988 to 1995. Tr. at 39. Records from Our Lady of Mercy Hospital, however, were not complete. Hawkins had been treated there approximately two or three times from 1995 to 1997, and she was treated there once in June 1995 for an asthma attack. Tr. at 21, 37. She had been "going [to Our Lady of Mercy] back and forth [ ] from '82," but reported that she had not been admitted there overnight for any reason since 1988. Tr. at 21, 38. The administrative record contained only a report regarding her 1995 emergency room visit, when Hawkins was subsequently diagnosed with menopause syndrome. Tr. at 196–97. The ALJ stated that he would ask Our Lady of Mercy to update the record. Tr. at 37, 39. The ALJ also requested that New York Medical Group submit records subsequent to September 19, 1995, and reports regarding Hawkins's respiratory and seizure disorders from Dr. Enu. Tr. at 21. Our Lady of Mercy and New York Medical Group did not respond to the ALJ's requests. *Id.*

Hawkins was last insured for disability insurance benefits on December 31, 1993, based on when she stopped working in 1988. Tr. at 37.

## III. DISCUSSION

### A. Standard of Review

The ALJ's findings of fact are conclusive, unless they are not supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v.*

*Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Pena v. Chater,* 968 F.Supp. 930, 937 (S.D.N.Y.1997). Inferences and conclusions drawn from such facts are also conclusive. *Marchand v. Sullivan,* 1991 WL 183355, *2 (S.D.N.Y. Sept.11, 1991); *Ortiz v. Chater,* 1995 WL 625735, *2 (E.D.N.Y. Oct.12,1995). Accordingly, a court will not overturn a final agency decision denying disability benefits unless the plaintiff demonstrates that the Commissioner's decision was not supported by substantial evidence. 42 U.S.C. § 405(g); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991); *Pena,* 968 F.Supp. at 937. The reviewing court does not assess the issue of a claimant's eligibility *de novo. Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996); *Jones,* 949 F.2d at 59.

■ Furthermore, the court must uphold a denial of benefits supported by substantial evidence even in cases where there is substantial evidence supporting the plaintiff's position, *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990), or where the court's independent analysis of the evidence would differ from the Commissioner's. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 (quoting, *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

## B. Determination of Disability

The Act's definition of disability for the purposes of disability insurance and SSI is substantially the same. *Hankerson v. Harris,* 636 F.2d 893, 895 n. 2 (2d Cir. 1980). For an individual to be considered disabled, she must have a medically determinable physical or mental impairment which has lasted or can be expected to last

for a continuous period of not less than twelve months and, as a result, she is unable to engage in any substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant is not considered disabled if she can engage either in her previous work, or in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B).

The ALJ followed the five-step analysis set out in the Secretary's regulations to decide whether a plaintiff is entitled to disability benefits. 20 C.F.R. §§ 404.1520, 404.1527(d)(2), 416.920 (2005); *Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). First, she considered whether Hawkins was currently engaged in substantial gainful activity. *Diaz,* 59 F.3d at 312; Tr. at 20. Second, because Hawkins was not so engaged, she considered whether Hawkins has a "severe impairment" which significantly limits her ability to do basic work activities. *Id.;* Tr. at 20. Although Hawkins suffered from such an impairment, at the third step the ALJ found that it was not listed in Appendix 1 of the regulations, nor was it equal to an impairment listed there. *Id.;* Tr. at 20. Therefore, she could not be considered disabled at this step. *Id.;* Tr. at 20. At the fourth step, the ALJ found that, despite her severe impairment, the Hawkins had the residual functional capacity to perform her past work. Tr. at 20. She did not reach the fifth step, whether the claimant could perform other kinds of work. *Id.* Hawkins had the burden of proof with respect to the first four steps. *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998); *Davila v. Barnhart,* 2004 WL 2914073, *7 (S.D.N.Y. Dec.15, 2004). If Hawkins had satisfied the first four steps, the burden would have shifted to the Commissioner to prove the fifth element. *Schaal,* 134 F.3d at 501; *Davila,* 2004 WL 2914073 at *7.

■ Factors to be considered in making a determination of disability include objective medical facts and diagnoses, medical opinions, subjective evidence of disability by the plaintiff, and plaintiff's background, age, and work experience. *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir. 1999); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980). Moreover, the expert opinion of the treating physician is entitled to particular weight. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.(Vt.) 1980).

The Department of Labor's *Dictionary of Occupation Titles* classified cashier employment as "light work" when it requires walking or standing to a significant degree, as in the instant case. DICOT § 211.462–014 ("Cashiers and Tellers"). The job also constitutes "light work" when it requires that an employee exert up to twenty pounds of force "occasionally," defined as existing 1/3 of the time, and/or up to ten pounds of force "frequently," defined as existing from 1/3 to 2/3 of the time, and/or a negligible amount of force "constantly," defined as existing 2/3 or more of the time, to move objects. *Id.* Hawkins's previous employment as a supermarket cashier thus constituted "light work," as defined by the Department of Labor.

Additionally, to be entitled to Supplemental Security Income ("SSI") benefits, plaintiff must demonstrate that her income and resources do not exceed specified limits. 42 U.S.C. § 1382(a). However, a plaintiff may not receive benefits until the first month after she satisfies the applicable requirements, since benefits are not payable for any period prior to the filing of the application. 20 C.F.R. § 416.335; *see also Davila,* 2004 WL 2914073 at *3. Accordingly, the earliest that Hawkins would have been entitled to receive SSI benefits is August 1995, based on her July 1995 application.

### 1. Application of the Correct Legal Principles

■ The Court's first inquiry is whether the ALJ applied the correct legal principles in determining Hawkins's eligibility. In this case, she did so. She applied the proper five-part test under 20 C.F.R. §§ 404.1520 and 416.920, and found that Hawkins was not disabled within the meaning of the Act because she retained the functional capacity to perform her past relevant work as a supermarket cashier. Tr. 20–27.

### 2. The Existence of Substantial Evidence

■ Hawkins claims that the ALJ's decision should be overturned because the ALJ did not fully develop the record because she failed to retrieve medical records from Our Lady of Mercy Medical Center since 1988, and from New York Medical Group from September 1995 to July 17, 1997. Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, at 12–17; Tr. at 18, 21. She does not demonstrate, however, that the result would have been different had the ALJ possessed the records in question. Additionally, the administrative record clearly indicates that the ALJ's decision that Hawkins could perform her previous employment as a cashier was based on substantial evidence.

Hawkins's job required that she primarily operate a cash register, bag groceries, and supervise other employees. Tr. at 49, 112; *see also* DICOT § 211.462–014. She testified that she worked while standing up, carried food items approximately two feet, and lifted no more than twenty pounds. Tr. at 49–50, 113. An August 1995 report from Dr. Balinberg, her consulting physician, did not indicate that Hawkins was unable to perform these duties. The report stated that she had

only *some* limitations with respect to manipulating heavy loads, running, walking fast, climbing many stairs, and respiratory irritants. Tr. at 213. As Hawkins's job did not expose her to these conditions, Tr. at 49, 112; *see also* DICOT § 211.462–014, she was able to work. Another August 1995 report stated that there was no evidence of any ocular or visual deficiency, Tr. at 220, and a July 1995 HRA report, indicated that Hawkins was temporarily disabled for six months. Tr. at 204. Considering the record as a whole, the documents that Our Lady of Mercy and New York Medical failed to submit did not warrant reversal because the administrative record contained numerous records and reports to support the ALJ's decision. This record included, but was not limited to, a complete record from 1988 to 1995 of Hawkins's examinations and treatments at New York Medical Group, the hospital where Hawkins was examined and treated almost exclusively from 1988 to 1997. Tr. at 39. Also included were reports from treating physician Dr. Enu and other doctors at New York Medical Group, as well as from consulting physicians, including Balinberg and Gillman, and a report from HRA. Tr.at 204, 211–18, 219–221. Although these records indicated that Hawkins suffered from various ailments, the evidence on the record as a whole did not definitively controvert the ALJ's decision that Hawkins was not disabled within the meaning of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

■ Hawkins's treating physician, Dr. Enu, indicated in his September 1995 report that Hawkins could not lift more than one pound, could stand or walk for less than two hours a day, and could sit for up to six hours a day. Tr. at 227. However, Dr. Enu failed to explain how the conditions for which he treated her—diabetes, respiratory disease, elevated cholesterol, and occasional seizures—resulted in such limitations. These limitations are thus not supported by Dr. Enu's records or the evidence as a whole.

Finally, the cases relied on by Hawkins are distinguishable from the instant case. In *Mejias v. Apfel*, 1998 WL 651052, *1, *4 (S.D.N.Y. Sept.23 1998), for example, the failure to retrieve additional documents was critical because, other than the plaintiff's oftentimes ambiguous testimony, the administrative record was largely lacking; replete with evidence that was either silent or woefully inadequate with regard to the plaintiff's claims. *Id.* at *4 ("completely absent from the record are any reports from [the hospital that treated plaintiff] for over 20 years"). Similarly, in *Carroll v. Secretary of Dept. of Health & Human Services*, 872 F.Supp. 1200, 1205 (E.D.N.Y. 1995), the administrative record had no medical reports or records from a physician who had treated the plaintiff for over four years. *Id.* In stark contrast, the ALJ in the instant case based his decision on eight years of medical records and reports from Hawkins's primary hospital and reports from her treating and consulting physicians. Considering the administrative record on the whole and Hawkins's testimony, it was clear that the ALJ's decision was based on substantial evidence, even absent the additional materials.

■ Hawkins also claims that the ALJ's decision was invalid because the ALJ failed to give controlling weight to the treating physician's opinion and because the ALJ did not obtain a vocational expert's testimony with respect to the existence of feasible alternative employment. Mem. in Support, at 17–20, 20–24. Neither assertion has merit. First, while a treating physician's opinions deserve special treatment, the ALJ is not required to give them controlling weight where, as here, they are contradicted by other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *see also Halloran v.*

*Barnhart,* 362 F.3d 28, 32 (2d Cir.2004); *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir.2002). For example, Dr. Enu stated that Hawkins could not perform her previous employment because she could not lift more than one pound and had problems standing and sitting. Tr. at 227. However, although the Balinberg and HRA reports indicated that Hawkins had limitations and a temporary disability, they did not definitively preclude her from working. Tr. at 204, 213. Second, the ALJ was not required to obtain the testimony of a vocational expert with respect to step five, whether feasible alternative employment existed. Hawkins failed to meet her burden in step four because she failed to demonstrate that she could not perform her previous employment. Therefore, the burden never shifted to the ALJ to satisfy step five.

Accordingly, the ALJ's decision that Hawkins was not eligible for disability insurance or SSI benefits was determined under the correct legal standard and was supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, I recommend that defendant's cross-motion be **GRANTED** in its entirety and that plaintiff's cross-motion be **DISMISSED.**

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam* ); 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).