Sammy QUINTANILLA, Plaintiff,

v.

Michael J. ASTRUE, Defendant.

Civil Action No. C–07–277.

United States District Court,
S.D. Texas,
Corpus Christi Division.

June 27, 2008.

Nancy B. DeLong, Texas Rio Grande Legal Aid Inc., Corpus Christi, TX, for Plaintiff.

Scott Thomas Morris, SSA OGC, Dallas, TX, for Defendant.

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION REGARDING THE LITIGANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

JANIS GRAHAM JACK, District Judge.

On June 11, 2008, United States Magistrate Judge Brian L. Owsley signed a Memorandum and Recommendation recommending as follows:

1) that the plaintiff's motion for summary judgment (D.E. 20) be granted with respect to his claims that the Administrative Law Judge improperly rejected Dr. Ramirez's medical opinions tending to show disability, that the Administrative Law Judge did not determine plaintiff's credibility pursuant to the applicable law, and that the Administrative Law Judge erroneously failed to make a finding that he was able to maintain employment;

2) that plaintiff's motion for summary judgment (D.E. 20) be denied with respect to his claims that the Administrative Law Judge erred in (a) applying res judicata; (b) not finding him disabled under the grid rules; (c) considering his failure to seek treatment as an adverse credibility factor without finding that his condition responded to treatment; (d) determining he was capable of light exertion; (e) relying on the vocational expert's testimony that the jobs described involved only average stress; (f) failing to incorporate his moderate limitation in social functioning into his question to the vocational expert; and (g) failing to complete the record.

3) that defendant's cross-motion for summary judgment (D.E. 18) be granted with respect to the Administrative Law Judge's application of res judicata, his determination that plaintiff was capable of light exertion, and plaintiff's waiver of objection to the Administrative Law Judge's hypothetical, and denied in all other respects; and

4) this matter be remanded for further proceedings consistent with this memorandum and recommendation.

Seeing no objection to this recommendation by either party and having now re-

viewed the recommendation, this Court hereby adopts as its own the Memorandum and Recommendation as the decision of the Court. Accordingly, it is ORDERED as follows:

1) the plaintiff's motion for summary judgment (D.E. 20) is granted with respect to his claims that the Administrative Law Judge improperly rejected Dr. Ramirez's medial opinions tending to show disability, that the Administrative Law Judge did not determine plaintiff's credibility pursuant to the applicable law, and that the Administrative Law Judge erroneously failed to make a finding that he was able to maintain employment;

2) plaintiff's motion for summary judgment (D.E. 20) is denied with respect to his claims that the Administrative Law Judge erred in (a) applying res judicata; (b) not finding him disabled under the grid rules; (c) considering his failure to seek treatment as an adverse credibility factor without finding that his condition responded to treatment; (d) determining he was capable of light exertion; (e) relying on the vocational expert's testimony that the jobs described involved only average stress; (f) failing to incorporate his moderate limitation in social functioning into his question to the vocational expert; and (g) failing to complete the record.

3) defendant's cross-motion for summary judgment (D.E. 18) is granted with respect to the Administrative Law Judge's application of res judicata, his determination that plaintiff was capable of light exertion, and plaintiff's waiver of objection to the Administrative Law Judge's hypothetical, and denied in all other respects; and

4) this matter is remanded for further proceedings consistent with this memorandum and recommendation.

SIGNED and ORDERED.

## MEMORANDUM AND RECOMMENDATION REGARDING THE LITIGANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT

BRIAN L. OWSLEY, United States Magistrate Judge.

Plaintiff Sammy Quintanilla brought this action for review of the Commissioner's decision to deny Supplemental Security Income ("SSI") benefits on June 20, 2007. (D.E. 1). On February 8, 2008, defendant filed a cross-motion for summary judgment. (D.E. 18). On February 15, 2008, plaintiff filed a motion for summary judgment, and a memorandum in support. (D.E. 20, 21). For the following reasons, it is respectfully recommended that defendant's cross-motion for summary judgment be granted in part and denied in part, plaintiff's motion for summary judgment be granted in part and denied in part, and the case remanded for further proceedings.

### I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

### II. BACKGROUND

**A. Procedural History.**

In 1990 or 1991, petitioner learned he had contracted Human Immunodeficiency Virus ("HIV"). Administrative Record ("AR") at 595. On June 26, 2003, plaintiff filed an application for Title XVI benefits. *Id.* at 14. The Commissioner denied his application at the initial and appeals council levels. *Id.* On May 17, 2005, an administrative law judge ("ALJ") affirmed the determination. *Id.* On July 1, 2005, the appeals council affirmed the ALJ's determination. *Id.*

On September 2, 2005, plaintiff applied for SSI benefits with an alleged onset date of June 23, 2003. *Id.* This application was denied on December 30, 2005. *Id.* On May 30, 2006, he requested review by an ALJ. *Id.* On November 17, 2006, an ALJ conducted a hearing regarding plaintiff's application. *Id.* On December 19, 2006, the ALJ issued an unfavorable determination. *Id.* at 11. On April 6, 2007, the appeals counsel affirmed his decision. *Id.* at 3. Plaintiff filed this complaint on June 20, 2007. (D.E. 1).

## B. Plaintiff's Medical Records.

Dr. Guillermo Ramirez of the Valley Aids Council is plaintiff's treating physician. AR at 17. He examined plaintiff three times in connection with his applications for state benefits. On July 8, 2004, he concluded that plaintiff was temporarily disabled, and not expected to be able to work for more than six months. *Id.* at 556. He did not express an opinion on his capacity to sit, keyboard, or perform other work-related functions for sustained activity because his condition varied so much from day to day. *Id.* He also found him unable to lift ten pounds for an hour each day, and did not think he could work in an office environment. *Id.* On January 24, 2005, Dr. Ramirez completed an evaluation that indicated no changes. *Id.* at 554. On June 14, 2005, however, he indicated that plaintiff could lift up to twenty pounds for short periods of time, and perform all work-related physical activities for four hours per day. *Id.* at 551. He still considered plaintiff unable to work. *Id.*

On December 14, 2005, Dr. Lynn Fisher–Kittay performed a mental status examination on plaintiff. *Id.* at 446. She assessed his reliability as good, "based on his ability [to] provide an adequate overview of his emotional, medical, legal, and substance abuse problems." *Id.* He com-

plained of depression, anxiety, anger, and an inability to focus on his schoolwork. *Id.* He reportedly got up at 7:00 a.m. each day to go to school. *Id.* at 447. He had one or two friends, and his girlfriend, but socialized mainly with his family. *Id.* Although he claimed to take his medication as prescribed, his physical condition was deteriorating. *Id.* He appeared anxious and depressed, his tone was occasionally histrionic, and his eye contact was only fair. *Id.* at 447–48. He did not exhibit disorganized thought processes, but could not interpret a simple proverb. *Id.* at 448. He was preoccupied with his medical, emotional, and legal problems, and his conversation centered around narcissistic and persecutory themes. *Id.*

Dr. Fisher–Kittay thought plaintiff's intellectual ability was low-average. His concentration and recent memory were poor, but his remote and immediate memory was intact. *Id.* His judgment and insight were mixed; he attended appointments and was aware that his ability to function was impaired, but did not discuss his emotional problems with his physicians, and lacked insight into their severity. *Id.* at 449. His hygiene, gait, and posture were normal. *Id.* at 447. Dr. Fisher–Kittay thought his prognosis was "very poor." *Id.* at 449. She expected him to continue to require assistance from friends, family, and the medical community. *Id.*

On December 30, 2005, Dr. Mark Boulos completed a psychiatric review. *Id.* at 453. He concluded that plaintiff suffered from adjustment disorder and dysthemia, *id.* at 456, post-traumatic stress disorder ("PTSD"), *id.* at 458, and antisocial personality disorder. *Id.* at 460. He felt that plaintiff's drug abuse had caused these problems. *Id.* at 461. Dr. Boulos diagnosed him as mildly limited in activities of daily life, and moderately limited in social

function, and in maintaining concentration, persistence, and pace. *Id.* at 463. He also determined that plaintiff had not experienced any episodes of decompensation, and that none of his disorders met the "C" criteria of the listings. *Id.* at 463–64. He opined that a GAF score of 45 "appears low in light of claimants [sic] functional status." *Id.* at 465.

Dr. Boulos also completed a mental residual functional capacity ("RFC") assessment. *Id.* at 467. He determined that plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, to maintain attention and concentration, and pace, and to complete a normal workday without interruptions. *Id.* at 467–68. Plaintiff also displayed moderate limitations in his ability to interact with the general public, and to respond appropriately to instruction and criticism from supervisors. *Id.* at 468. However, Dr. Boulos concluded that the record did not support the mental limitations alleged by plaintiff. *Id.* at 469.

On December 30, 2005, Dr. Scott Spoor completed a physical RFC assessment. *Id.* at 471. He opined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, as well as stand, walk, and sit for six hours of eight each workday. *Id.* at 472. He also opined that plaintiff's alleged limitations were not fully supported by the medical and other evidence. *Id.* at 476.

## C. The November 17, 2005 Administrative Hearing.

On November 17, 2005, the ALJ held a hearing on plaintiff's disability status. AR at 591. He was represented by Kathleen Day, an attorney for Heard & Smith LLP.

*Id.* Ms. Day began by explaining that plaintiff had abstained from drugs and alcohol for the past year, weakening the rationale for the previous denial. *Id.* at 593. She then highlighted his CD4 cell count of 240,[1] which she opined was "indicative of a decompensated physical condition." *Id.* at 594.

Plaintiff testified that he had almost completed the requirements for a Bachelor's degree in science and occupational training at Texas A & M University, Corpus Christi. *Id.* He explained that although he was scheduled to work fifteen hours per week, he only worked about half that because of his medical appointments and HIV symptoms. *Id.* at 595. His most recent paycheck was only $60.00. *Id.*

Plaintiff explained that even though he was taking Ambien, he averaged only two or three hours of sleep each night. *Id.* at 597. He often experienced shaking, nausea, and shortness of breath. *Id.* at 598. His condition varied, so that he had good days and bad days, but the university accommodated his disabilities. *Id.* The disability services department did not tell his teachers the reason for the accommodations. *Id.* However, he could not stop thinking that everyone knew that he was sick. *Id.* This depressed him, and he isolated himself. *Id.* at 599. He still had a girlfriend, but he felt she was "getting away from [him]" due to his sickness and pressure from her family. *Id.*

Plaintiff was not taking any medication for depression, but had been seeing a counselor for three or four months, and had an appointment to see a psychiatrist. *Id.* His depression exacerbated his symptoms. *Id.* at 600. Moreover, his medicines caused him to shake. *Id.* at 601.

---

1. CD4 cells are also known as "helper T" cells. Russ, Freeman, & McQuade, 6 Attorney's Medical Advisor § 53:6 (2008). The HIV infection destroys these cells and reduces resistance to opportunistic infections.

Plaintiff explained that he worked in the university campus computer services department. *Id.* at 602. His GPA was 2.6 overall. *Id.* He had completed approximately 100 credit hours, of 126 required to graduate. *Id.* at 603. Each class period lasted from an hour to ninety minutes. *Id.*

The ALJ asked the vocational expert to

... assume an individual who alleges a disability at age 32, currently 35, approximately three years of college as he testified to and he has limited past relevant work only, as noted in [the record], and as he testified here to now, he's just doing very limited part-time work and as a condition of being a full-time student, he is allowed to do the student work. If he were not a student, it's my understanding that he can't perform that job as a student worker. So within that, and for this first hypothetical, I'm going to restrict him to a maximum lift and carry of twenty pounds occasionally, only ten pounds frequently.... I'm going to restrict him to sitting roughly of four hours a day or standing four hours a day or walking four hours a day, climbing ladders and stairs four hours a day, also kneeling and [stooping, pushing and pulling, and keyboarding continuously] no more than four hours a day, and carrying twenty pounds a day for two hours and the rest would be at a ten pound limit.... I'm also going to impose a requirement that the work would only have moderate to average stress in the work site, as opposed to very high stress job [sic] like an air traffic controller or a waitress during rush hour.

*Id.* at 604–05. The vocational expert opined that plaintiff could work as an assembler, a laundry folder, or a bench worker. *Id.* at 606. However, he would be subject to termination if he missed more than two days of work per month, or work effectively for an entire eight hour

workday. *Id.* at 607. Plaintiff commented that he had been a laundry folder in prison, and went to school to be more than that. *Id.* at 608.

## D. The ALJ's Decision.

On December 19, 2006, the ALJ issued an unfavorable decision, explaining that he found no reason to reopen the earlier decision, and thus would only evaluate plaintiff's eligibility from May 18, 2005 onward. *Id.* at 14. He determined that plaintiff had not engaged in substantial gainful activity after June 23, 2003. *Id.* at 16. Plaintiff suffered from three severe impairments: HIV, major depressive disorder, and anxiety disorder. *Id.* Those impairments, however, did not meet the requirements for a listed impairment when considered alone, or in combination. *Id.* at 17.

The ALJ found that plaintiff could

lift/carry 20 pounds 2 hours out of an 8 hour workday and 10 pounds frequently; claimant can sit, stand, walk, climb ladders/stairs, kneel, squat, stoop, push/pull, and keyboard continuously 4 hours out of an 8 hour workday. Further, claimant has an additional limitation of exposure to a range of moderate to average stress in the worksite.

*Id.* at 17. These restrictions were consistent with Dr. Ramirez's June 14, 2005 RFC evaluation. *Id.* Moreover, plaintiff did not show physical symptoms of illness on that and other visits to Dr. Ramirez during the relevant period. *Id.* at 17–18.

The ALJ also rejected plaintiff's psychiatric disability claim. *Id.* He found Dr. Boulos' opinion more credible than Dr. Fisher–Kittay's. *Id.* at 19. He explained that "objective testing did not reveal any significant deficiencies" to support a GAF score of 45. *Id.* The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these

symptoms are not entirely credible." *Id.* at 19.

Regarding claimant's allegations of depression and anxiety, the undersigned notes claimant has never sought treatment of any kinds [sic]. It is unclear what claimant's condition would be had he taken some form of medication or sought clinical care.... Further, claimant has been attending a college university full time since his alleged onset date. In addition, he works 10–15 hours per week and studies. Taken as a whole, this accounts for the majority of claimant's day and almost equals a full time schedule.

*Id.* at 19–20. Moreover, at the hearing, plaintiff admitted that he could work as a laundry sorter, as he had in prison. *Id.* at 20. The most significant factor in the ALJ's adverse credibility judgment, however, was

his lack of compliance with his HIV medication regimen and his absence from routine follow up examinations. During the relevant period of time, claimant missed as many appointments as he attended. Dr. Ramirez repeatedly reminded claimant to attend his follow up appointment. At one time, claimant stopped taking his medication for a two month period.

*Id.* at 20. Thus, the ALJ found his subjective complaints "credible only to the extent they are consistent with the decision herein." *Id.*

The ALJ also chose not to credit Dr. Ramirez's later opinions that plaintiff was unable to work, or perform activities of daily living. *Id.* He did not accord them any weight because they were

inconsistent with Dr. Ramirez's own treating notes and the objective medical evidence as a whole. Claimant [sic] activities of daily living are contrary to one whose condition would render him incap-

able of any work. Claimant has been attending school full time and working 10–15 hours since May 18, 2005. In addition, claimant reports that he is able to clean the house, study, and attend his personal needs.... Further, claimant has been able to maintain a 2.6 grade point average in school while attending full time and working 10–15 hours per week.

*Id.* The ALJ also observed that plaintiff exacerbated his own symptoms by failing to adhere to treatment and medication schedules. *Id.* Thus, "the only opinion of Dr. Ramirez's that is given significant weight is his June 14, 2005 assessment." *Id.*

Plaintiff had no past relevant work, but was an English-speaker with a high school education. *Id.* He had no past relevant work, and no transferable skills. *Id.* Although the grid rules mandate a finding of "not disabled" if such an individual is able to perform the full range of light work, plaintiff suffered additional limitations. *Id.* at 21. The vocational expert's testimony was thus necessary to establish the existence of suitable jobs in the national economy. *Id.* As he had testified that plaintiff could work as an assembler, laundry folder, or bench worker, the ALJ concluded that plaintiff was "not disabled" during the relevant time period and accordingly denied benefits for the relevant period. *Id.*

## III. LEGAL STANDARDS

### A. Social Security Act Disability Insurance Benefits Requirements.

The Social Security Act establishes that every individual who is insured for benefits, has not attained the set retirement age, has filed an application for disability benefits, and is under a disability is entitled to receive disability benefits. 42

U.S.C. § 423(a)(1). A person is under a disability when he cannot "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Act establishes that a claimant is not disabled if that person can perform jobs available in the national economy:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## B. Social Security Administration Regulations and Rulings.

The Social Security Administration uses a five-step sequential process to determine if an individual suffers from a disability. 20 C.F.R. § 404.1520. A disability finding at any point in the five-step process is conclusive and ends the analysis. *Villa v. Sullivan,* 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted). A claimant bears the burden of proof on the first four steps. *Bowling v. Shalala,* 36 F.3d 431, 435 (5th Cir.1994) (per curiam) (citation omitted). A claimant must prove that (1) he is not presently engaged in substantial gainful activity; (2) he suffers from an impairment or impairments that are severe; and that either (3) the impairment meets or equals an impairment listed in the appendix to the regulations; or (4) due to claimant's RFC, the impairment prevents the claimant from doing past relevant work. 20 C.F.R. § 404.1520(a)(4); *see also Bowling,* 36 F.3d at 435; *Villa,* 895 F.2d at 1022.

■ The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." *Loza v. Apfel,* 219 F.3d 378, 390 (5th Cir.2000). The Commissioner may find that a claimant's impairment fails to meet the significant limitation requirement " 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' " *Id.* at 391 (quoting *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985)).

■ Step three requires a claimant to prove that his impairment meets one or more of the impairments listed in the regulations. *See* 20 C.F.R. § 404, Subpt. P, App. 1. The list includes both physical and mental impairments. The criteria for mental impairments take into account whether there is marked interference with activities of daily living, social functioning, concentration, persistence, or pace, and whether the claimant has suffered repeated episodes of decompensation. 20 C.F.R. § 404, Subpt. P, App. 1, Part A § 12.00(C). The regulation defines "episodes of decompensation" as "exacerbations or temporary increases in symp-

toms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* at Part A § 12.00(C)(4). The claimant must present evidence that the impairment is a long-term problem rather than a temporary set-back, but "does not have to show a 12 month period of impairment unmarred by any symptom-free interval." *Singletary v. Bowen,* 798 F.2d 818, 821 (5th Cir.1986) (citations omitted).

Pursuant to the fourth step, if necessary, a claimant who is unable to show that his impairment meets one of the listed impairments must show that he is unable to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The Commissioner considers the claimant's RFC in making this determination. *Id.*; *see also* 20 C.F.R. § 404.1545. The RFC describes the most a claimant can do despite any limitations caused by an impairment. 20 C.F.R. § 404.1545(a)(1). The Commissioner is to consider all relevant record evidence, including medical and non-medical evidence, when making an RFC determination. 20 C.F.R. § 404.1545(a)(3).

If the claimant makes the required step four showing, the burden shifts to the Commissioner to determine, based on the claimant's RFC, age, education, and work experience, whether the claimant can make an adjustment to other jobs present in the national economy in significant numbers. 20 C.F.R. § 404.1520(a)(4)(v). If he cannot make such an adjustment, the claimant is disabled. *Id.*

## C. Judicial Review of the ALJ's Decision.

■ Judicial review of the Commissioner's denial of benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision complies with relevant legal standards. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir.2000) (citations omitted). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *accord Carey,* 230 F.3d at 135 (citation omitted). The Fifth Circuit has described this burden as more than a scintilla, but less than a preponderance. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.' " *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir.1988) (per curiam) (citation omitted).

■ In applying the substantial evidence standard, courts are to scrutinize the record to determine whether such evidence is present. However, they may not reweigh evidence, try issues *de novo,* or substitute their own judgment for the Commissioner's. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (citation omitted). Factual conflicts in the record are for the Commissioner to resolve, not this Court. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002). The Court, like the ALJ, must consider the evidence as a whole and take into account the following factors: "1) objective medical facts; 2) diagnoses and opinions of treating and examining physicians; 3) claimant's subjective evidence of pain and disability; and 4) claimant's age, education, and work history." *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991) (per curiam) (citation omitted).

## IV. DISCUSSION

### A. The Court has no Jurisdiction to Review Plaintiff's Claim for Disability Benefits from the Alleged Onset Date to May 18, 2005.

■ The Commissioner can reopen and revise a final determination on his own initiative. 20 C.F.R. § 404.987(b). He may do so within a year for any reason, within four years for good cause, and at any time for certain enumerated reasons. 20 C.F.R. § 404.988; *see also* 20 C.F.R. § 404.989(a) (defining good cause as new and material evidence, clerical error in benefit computation, or clear error on the face of the decision). Courts do not have jurisdiction to reverse an ALJ's decision declining to reopen a final decision. *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *McCall v. Bowen,* 832 F.2d 862, 863 (5th Cir.1987); *Powell v. Shalala,* 41 F.3d 663, 1994 WL 684757, at *1–2 (5th Cir. Nov. 18, 1994) (per curiam) (unpublished) (when there is no constitutional claim, jurisdiction to review unappealed denial exists only where case was actually re-opened); *see also Torres v. Shalala,* 48 F.3d 887, 893–94 (5th Cir.1995) (upholding an ALJ's application of *res judicata;* finding unreviewable a "new claim on the same medical problems, with the same onset date and alleging the same disability").

The Commissioner denied plaintiff's first application on May 17, 2005. AR at 14. On September 2, 2005, he filed this application. *Id.* The ALJ could therefore have reopened it for any reason. 20 C.F.R. § 404.988. However, he declined to do so. AR at 14. This Court is without jurisdiction to review the ALJ's decision not to re-open the prior case. Therefore, it is respectfully recommended that defendant's cross-motion for summary judgment on the issue of plaintiff's disability status prior to the May 17, 2005 denial of benefits be granted.

### B. The ALJ Correctly Determined that Plaintiff's Impairment Did Not Meet the Criteria for a Listed Impairment.

■ Plaintiff argues that he meets the listing requirements for HIV[2] because he has had mucocutaneous infections. (D.E. 21, at 16). Specifically, "he has had thrush repeatedly, plus gluteal wards [sic] and lesions." *Id.* However, the listing to which he cites addresses only infections caused by the herpes simplex virus. *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.08D2(a)). There is no evidence that plaintiff suffers from herpes. Accordingly, it is respectfully recommended that this claim is without merit.

Plaintiff also argues that because each of his disabilities are similar to listed impairments, the ALJ should have called a medical expert "to see how they interrelate with each other." *Id.* at 17. The Supreme Court has explained that "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 416.926(a)) (emphasis in original). A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in severity and duration to the listed findings. *See* 20 C.F.R. § 404.1526(a). Nonetheless, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the

---

**2.** Regulations require that an applicant show both documentation of the HIV diagnosis and additional symptoms. 20 C.F.R. pt. 404, subpt. P, App. 1, § 14.08.

overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531, 110 S.Ct. 885. Equivalence is an issue of fact ultimately reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *see also Hector v. Barnhart*, 337 F.Supp.2d 905, 915 (S.D.Tex.2004) (citing *Knepp v. Apfel*, 204 F.3d 78, 85 (3rd Cir.2000)).

The ALJ's decision indicates that he considered the cumulative effect of plaintiff's impairments in calculating his functionality. AR at 19. Plaintiff does not identify what evidence, when juxtaposed, establishes an equivalent impairment. *See Atkins v. Barnhart*, 119 Fed.Appx. 672, 674–75 (5th Cir.2005) (per curiam) (unpublished). Moreover, he does not identify the listing to which his combined impairments are equivalent. He bears the ultimate burden of proof on this issue. *Bowling*, 36 F.3d at 435. Therefore, it is respectfully recommended that this claim is meritless.

## C. The ALJ Erred in Determining Plaintiff's Residual Functional Capacity.

### 1. The ALJ incorrectly weighed the medical opinions.

Federal regulations require the Commissioner to evaluate every medical opinion received, regardless of its source. 20 C.F.R. § 404.1527(d). When weighing medical opinions, the Commissioner is required to consider a number of enumerated factors unless he gives controlling weight to the opinion of a treating source. *Id.* However, a physician's opinion on a dispositive issue—*e.g.* that a claimant is "unable to work"—is not treated as a medical opinion. 20 C.F.R. § 404.1527(e)(1); *accord Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir.2003) (per curiam).

The ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly. *Greenspan*, 38 F.3d at 237. However, Social Security regulations require that the ALJ show good cause for rejecting a medical opinion. 20 C.F.R. § 404.1527(d); *Loza*, 219 F.3d at 395. An ALJ may not arbitrarily ignore uncontroverted medical evidence. *Goodley v. Harris*, 608 F.2d 234, 236–37 (5th Cir.1979) (citing *Mims v. Califano*, 581 F.2d 1211 (5th Cir.1978)).

In *Newton v. Apfel*, 209 F.3d 448 (5th Cir.2000), the Fifth Circuit held "that, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453 (emphasis in original). The criteria set forth by Social Security regulations include whether a treating physician's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques ... not inconsistent with ... other substantial evidence," and also the length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(d)(2)-(6). Even when a physician's opinion does not meet the test for controlling weight, it is still entitled to deference, and in many cases should still be accorded the greatest weight. *Newton*, 209 F.3d at 456; *see also Loza*, 219 F.3d at 395 ("The ALJ is not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings. Consequently, the ALJ and the

Commissioner committed reversible error by failing to accord 'great weight' to the medical reports of the treating physicians.").

The ALJ rejected Dr. Ramirez's April 28, 2006 opinion that plaintiff was unable to work due to his HIV symptoms and an "inability to stay on-site for a long time." AR at 17. The opinion, he explained, was "inconsistent with Dr. Ramirez's own treating notes and the objective medical evidence as a whole." *Id.* at 20. However, the ALJ failed to identify any such evidence, nor did he analyze the opinion in accordance with the relevant regulations. Instead, he relied entirely on a subjective determination that plaintiff's daily activities are "contrary to one whose condition would render him incapable of any work." *Id.*

The ALJ noted that plaintiff had been attending school full-time and working ten to fifteen hours per week since May 18, 2005. *Id.* He did not, however, address plaintiff's testimony that he was enrolled in only four classes, which is not a full-time load. *Id.* at 594. Similarly, he ignored plaintiff's testimony that he works only around seven hours per week, and that his last paycheck was for only $60. *Id.* at 595. The record indicated that plaintiff's gross wages in 2005 were only $426.88. *Id.* at 56. As his pay rate was $6.25 per hour, *see id.* at 70, he worked only around 68 hours. Based on a fourteen-week fall se-

mester, he averaged fewer than five hours per week. The ALJ substantially overstated plaintiff's work and school commitments in his credibility analysis.

The ALJ next observed that "claimant reports that he is able to clean the house, study, and attend [sic] his personal needs." *Id.* at 20. However, he failed to address plaintiff's testimony that his sister cooks, shops, cleans, and does laundry for him. *Id.* at 600–01. He also ignored plaintiff's allegations that his friends and family do all of his cooking and shopping for him. *Id.* at 87–88. Finally, he neglected to explain that plaintiff was responding to a question about personal grooming when he wrote that "I am okay to do my personal needs." *Id.* at 88. Thus, he overstated the evidence that plaintiff is able to attend to activities of daily life.

Plaintiff's failure to comply with his treatment was also a factor in the ALJ's determination. The ALJ asserted that "[plaintiff's] non-compliance with both medication and treatment contribute to his symptomology." *Id.* at 20. The record does not show that plaintiff would have been less symptomatic if medicated. In fact, the ALJ noted that plaintiff was "asymptomatic when he took himself of [sic] medication." *Id.* at 18. Moreover, plaintiff was prescribed Combivent,[3] Diflucan,[4] and Trizivir,[5] which can cause side effects. *See id.* at 67; *see also id.* at 560 (letter noting that plaintiff's medications cause side effects). The ALJ did not con-

---

3. Combivent, also called albuterol, is administered as an aerosol for breathing difficulties. *See* Physician's Desk Reference, at 838 (62nd ed. 2008) ("PDR"). Possible side effects include fatigue, dizziness, nervousness, diarrhea, and vomiting. *Id.*

4. Diflucan is an anti-fungal medication. Side effects include nausea, vomiting, abdominal pain, diarrhea, and headaches. In clinical trials, adverse side effects were reported more frequently in HIV infected patients (21%) than in non-HIV infected patients (13%). *See*

Diflucan information sheet, *available at* http://media.pfizer.com/files/products/uspi_diflucan.pdf.

5. Trizivir is an AIDS cocktail. *See* PDR at 1592. Approximately 9% of patients taking Trizivir become hypersensitive to it and experience a "multi-organ clinical syndrome" that can cause a wide range of gastrointestinal problems, respiratory ailments, fatigue, rash, and fever. *See id.* at 1594–95; *see also* Trizivir fact sheet, *available at* http://us.gsk.com/products/assets/us_trizivir.pdf.

sider whether the side effects would impair his ability to work. Accordingly, it is respectfully recommended that the ALJ's rationale for rejecting Dr. Ramirez's opinion is not supported by substantial evidence, and does not comply with relevant law.

### 2. The ALJ did not comport with applicable law in discounting plaintiff's credibility.

Plaintiff claims that the ALJ did not properly evaluate his subjective complaints, or credibility. (D.E. 18, at 2–3). Social Security Ruling ("SSR") 96–7P describes how the Commissioner is to evaluate subjective symptoms and to determine the credibility of an individual's statements. SSR 96–7P, 1996 WL 374186 (S.S.A.); *see also Beck v. Barnhart*, 205 Fed.Appx. 207, 212–13 (5th Cir.2006) (per curiam) (unpublished) (evaluating ALJ's decision according to SSR 96–7p). According to this ruling, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. SSR 96–7P, 1996 WL 374186, at *1. The ALJ must next evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's abilities to do basic work activities. *Id.* If the individual's statements regarding the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ determines credibility by considering the record as a whole, including medical signs and laboratory findings; the individual's own statements about the symptoms; any statements or other information provided by treating or examining physicians, psychologists, or other persons about the symptoms and how they affect the individual; and any other relevant evidence. *Id.*

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence, SSR 96–7P establishes seven factors, outlined in 20 C.F.R. §§ 404.1529(c) and 416.929(c), which the ALJ should consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms, such as lying flat, standing for fifteen to twenty minutes every hour, or sleeping on a board; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7P, 1996 WL 374186, at *3.

Finally, SSR 96–7P addresses the standard for making credibility determinations. *Id.* at *4. An ALJ's credibility determination cannot be based on an intangible or intuitive notion about an individual. *Id.* The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. *Id.* It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.* The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight.

*Id.* This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision. *Id.*

The ALJ found that plaintiff suffered from a medically determinable impairment that could reasonably produce his alleged symptoms. *Id.* at 19. However, his "statements concerning the intensity, duration, and limiting affects of these symptoms [were] not entirely credible." *Id.*

Plaintiff argues that the ALJ should not have discounted his subjective complaints based on treatment noncompliance without first finding that his condition would respond to medication. If an applicant's physician has prescribed treatment that can restore his ability to work, he must undergo the treatment in order to get benefits. 20 C.F.R. § 404.1530(a). If he does not comply, he will not be found disabled. 20 C.F.R. § 404.1530(b). Several circuits require an ALJ to make a finding that the treatment would restore the applicant's ability to work before denying benefits under this section. *See, e.g., Patterson v. Bowen,* 799 F.2d 1455, 1460 (11th Cir.1986) (collecting cases).

In this case, however, the ALJ ultimately denied benefits because he determined that plaintiff was able to work. AR at 20–21. His poor compliance with treatment was considered only insofar as it weighed upon the severity of plaintiff's alleged impairments. *Id.* at 20. The Fifth Circuit recognizes that an ALJ may rely on lack of treatment as evidence that an applicant's subjective complaints are not credible. *Cornett v. Astrue,* 261 Fed. Appx. 644, 650 n. 3 (5th Cir.2008) (citing *Villa,* 895 F.2d at 1024). Accordingly, it is respectfully recommended that the ALJ complied with relevant laws in this respect.

However, the ALJ erred in other respects. He discounted plaintiff's non-exertional limitations in large part because he "had never sought treatment" for depression or anxiety. AR at 19–20. He cited two documents in support of this conclusion: a December 14, 2004 report by Dr. Fisher–Kittay indicating that plaintiff had not discussed his emotional problems with his physician, *id.* at 447; and a June 8, 2004 report by Dr. Raul Capitaine indicating that he was not currently under psychiatric care. *Id.* at 410. It is unclear why the ALJ considered evidence predating the relevant period after explicitly claiming to limit his inquiry. *See id.* at 16. More important, however, is plaintiff's testimony at the November 2006 hearing that he had been seeing a counselor for four months, and had an appointment with a psychiatrist. *Id.* at 599. The ALJ's decision does not address this testimony.

The ALJ further found that "claimant admitted at the hearing that he could perform the requirements of a laundry sorter as he had performed that job in prison." *Id.* at 20. At the hearing, counsel asked if he could "do those jobs eight hours a day, seven days a week" considering his impairments. *Id.* at 608. Plaintiff responded that "I know I've got to survive and work, ... I mean, I would try it, I wouldn't say I'd be the best at it, but I would put the effort and I would just move on and go from there." *Id.* He also expressed disdain for the job, saying that if he were required to work as a laundry sorter with a four-year degree, they "might as well put me back in prison." *Id.* at 609. However, he never admitted to being currently able to perform all of the necessary job functions.

Finally, the ALJ also relied on plaintiff's ability to perform activities of daily living to discount both his physical and psychological limitations. As previously noted, his determinations in this respect are not supported by substantial evidence. Accordingly, it is respectfully recommended that the ALJ's credibility determination is

not supported by substantial evidence, and *does not comply with applicable law.*

### 3. The ALJ's determination that plaintiff was capable of light physical exertion.

An ALJ's RFC determination must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms. SSR 96–8p, 1996 WL 374184, at *7. This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom-related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical evidence, and address any medical opinions contained in the record. *Id.*

The ALJ is entitled to resolve conflicts in evidence. *Carey,* 230 F.3d at 135 (citation omitted). If a plaintiff's symptoms are not founded in objective medical evidence, then the ALJ must make a credibility determination of plaintiff's complaints. *See Myers v. Apfel,* 238 F.3d 617, 620–21 (5th Cir.2001) (per curiam). In making this determination, the ALJ must make every effort to obtain available information including, among other things, taking into consideration evidence concerning duration, frequency and intensity of symptoms, and type, dosage, effectiveness, and side effects of medication taken for symptoms. *See* 20 C.F.R. § 404.1529(c)(3). In addition, if plaintiff alleges a greater impairment than can be shown by objective medical evidence alone, the ALJ is to carefully consider the individual's statements about symptoms along with the record to reach a conclusion about the credibility of the individual's statements. SSR 96–7p, 1996 WL 374186, at *1. "The ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986) (citing *Dellolio v. Heckler,* 705 F.2d 123, 127 (5th Cir. 1983)).

The ALJ found that plaintiff was physically able to do light work.[6] AR at 21. He made this finding based primarily on a report Dr. Ramirez generated for the Texas Health and Human Services Commission on June 14, 2005. *Id.* at 17. In the report, Dr. Ramirez opined that plaintiff could sit, stand, walk, climb, and work at a keyboard for up to four hours per day, and was capable of lifting twenty pounds for two hours per day. *Id.* at 551. He also indicated that plaintiff's disability was not permanent, but expected to last more than six months. *Id.* Dr. Ramirez's report is consistent with Dr. Spoor's opinion after examining plaintiff on December 30, 2005. *Id.* at 471. Accordingly, it is respectfully recommended that the ALJ's determination that plaintiff could perform light exertion is supported by substantial evidence.

### D. The ALJ's Determination that Plaintiff was Able to Perform Jobs in the National Economy.

### 1. The ALJ's determination that plaintiff was able to handle the stress of jobs proposed by the vocational expert.

Plaintiff argues that "[t]here is absolutely no evidence in the record" that the jobs

**6.** The regulations provide that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, there is a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1568(b).

suggested by the vocational expert involved only ordinary stress. (D.E. 21, at 13–14). This argument misses the point that the vocational expert's testimony *is* evidence. *See* AR at 605–06 (testimony that an individual limited to only moderate stress could perform jobs). In a similar case, the Fifth Circuit reasoned that an ALJ could rely on a vocational expert's testimony:

> According to Payne, the requirements for those jobs [the vocational expert recommended] are inconsistent with her below average ability to maintain attention and concentration and to deal with work stresses. The DOT's job descriptions for the jobs listed by the VE do not obviously conflict with Payne's abilities, as found by the ALJ. Payne cites to no authority or facts beyond her own beliefs about job requirements to support the contention that a conflict exists. She has failed to show any conflict between the DOT and the VE's testimony.

*Payne v. Barnhart*, 54 Fed.Appx. 405 (5th Cir.2002) (per curiam) (unpublished) (citation omitted). Plaintiff's allegation is similarly unsupported. *See* (D.E. 21, at 13–14); *see also* Dictionary of Occupational Titles, entries 363.681–018 (laundry folder); 706.684–042 (bench worker); 729.687–010 (assembler). Accordingly, it is respectfully recommended that this claim is without merit.

### 2. The ALJ's failure to incorporate plaintiff's moderate limitation in social functioning in his hypothetical to the vocational expert.

For the purposes of determining whether a claimant can perform jobs in the national economy, impairments are classified as either exertional or non-exertional, or a combination of both. 20 C.F.R. § 404.1569a(a). Exertional impairments affect a claimant's ability to meet a job's strength requirements, while non-exertional impairments affect a claimant's ability to meet other job requirements. 20 C.F.R. § 404.1569a. If a claimant suffers from non-exertional impairments, alone or in combination with exertional impairments, the Commissioner must rely on a vocational expert to establish the existence of suitable jobs in the economy rather than simply accepting a "not disabled" determination under the medical-vocational guidelines. *See Loza*, 219 F.3d at 398–99; *Newton*, 209 F.3d at 458; *see also* 20 C.F.R. § 404 Subpt. P App. 2 (containing medical-vocational guidelines or "grid rules").

An ALJ must "incorporate reasonably all disabilities of the claimant" in his questions to the vocational expert. *Bowling*, 36 F.3d at 436. If the ALJ's questions to the vocational expert do not incorporate all the functional limitations he finds, his determination is not supported by substantial evidence. *Id.* The applicant must also have a chance to cross-examine the expert, and to correct deficiencies in the ALJ's question. *Id.* An applicant waives his right to challenge a hypothetical on review if he does not address its deficiencies at the hearing. *See Wise v. Barnhart*, 101 Fed.Appx. 950, 951 (5th Cir.2004) (per curiam) (unpublished) (citing *Bowling*, 36 F.3d at 436); *Rivera v. Barnhart*, 64 Fed.Appx. 416 (5th Cir.2003) (per curiam) (unpublished); *but see Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir.2001) (*Bowling* does not mean that an applicant's failure to identify a question's deficiencies at the hearing "automatically salvages that hypothetical as a proper basis for a determination of non-disability").

Before considering the vocational expert's testimony under the step five disability determination, the ALJ determined that plaintiff did not automatically qualify for benefits under the grid rules. AR at 21 (applying 20 C.F.R. § 404 Subpt. P,

App. 2, Rule 202.20). The vocational expert testified based on the ALJ's hypothetical, which postulated a hypothetical individual capable of a limited range of light work. *Id.* at 605–07. The individual was limited to light exertion, and only mild to moderate levels of stress. *Id.* at 605. The hypothetical thus incorporated only two of the three functional limitations the ALJ found: a mild limitation in daily activities, and a moderate limitation in concentration, persistence, or pace. *Id.* at 19. It failed to incorporate plaintiff's moderate limitation in social functioning. *Id.*

 Plaintiff's counsel, however, did not object to the question, or cross-examine the expert. *Id.* at 608. Accordingly, it is respectfully recommended that plaintiff has waived his right to challenge the ALJ's hypothetical question.

### 3. The ALJ erred by failing to make a separate finding that plaintiff could maintain employment.

 Plaintiff also contends that the ALJ erred in not making a separate finding that he could maintain a job. An applicant is disabled if he cannot keep a job for a significant period of time. *Watson v. Barnhart,* 288 F.3d 212, 217 (5th Cir.2002) (citing *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986)). The Fifth Circuit has explained, however, that not every case requires the ALJ to make an explicit finding to that effect. *Frank,* 326 F.3d at 619. He need only make such a finding explicitly when the record indicates either that "a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an

initial matter," or that the ALJ erroneously failed to consider the applicant's "ability to perform work on a regular and continuing basis" in determining his RFC. *Castillo v. Barnhart,* 151 Fed.Appx. 334, 336 (5th Cir.2005) (per curiam) (unpublished) (quoting *Dunbar v. Barnhart,* 330 F.3d 670, 672 (5th Cir.2003)). The necessary finding is subsumed in the RFC determination unless "the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Perez v. Barnhart,* 415 F.3d 457, 465 (5th Cir.2005) (citation omitted). Testimony about "good days and bad days" does not necessarily establish impairment sufficient to require an explicit finding on maintaining employment. *Id.*

 Dr. Ramirez's reports indicate that, for approximately a year, plaintiff's ability to perform work-related activities varied too much each day for a general assessment. AR at 554, 556.[7] On July 14, 2005, Dr. Ramirez upgraded his functional assessment. *Id.* at 551. However, he still reported that plaintiff was temporarily unable to work. *Id.* On May 22, 2006, Dr. Ramirez informed AIDS Services of Austin that plaintiff was unable to work due to "chronic fatigue, nausea, vomit [sic], diarrhea, also depression." *Id.* at 581. The ALJ interpreted this report to indicate that plaintiff was "unable to stay on site for a long time." *Id.* at 17. As the Eastern District of Texas concluded in a similar case, this evidence "triggers an affirmative legal duty to make an express finding of ability to work on a regular and continuous basis." *Campbell v. Barnhart,* 374

---

**7.** The ALJ appears not to have considered these reports at all because he did not reopen the prior filing. *See* AR at 14 ("the relevant evidence will be evaluated from May 18, 2005 through the present"). The reports, however, are relevant to whether plaintiff's condition waxes and wanes quite apart from their rele-

vance to his disability status before May 18, 2005. Moreover, the ALJ does consider evidence from before May 18, 2005 in other regards. *See id.* at 19–20 (discounting plaintiff's credibility because of two statements in 2004 that he had not sought treatment).

F.Supp.2d 498, 504 (E.D.Tex.2005) (citations omitted).

■ Moreover, the ALJ's functional assessment does not incorporate evidence relevant to plaintiff's ability to maintain employment. Although the ALJ opines that plaintiff's noncompliance with treatment exacerbates his symptoms, he did not address the limiting side effects of the medication. *See* AR at 560 (letter from Dr. Garcia explaining that plaintiff's medication causes nausea, vomiting, fatigue, and dizziness); *id.* at 598 (plaintiff's testimony that his medication causes nausea and shaking); *see also* notes 2–4, *supra.* Similarly, the ALJ's hypothetical question to the vocational expert did not reflect plaintiff's moderate limitation on social functioning, which can affect an applicant's ability to keep his job. *See Roy v. Commissioner of Soc. Sec. Admin.*, No. 7:07–CV–124, 2008 WL 1904628, at *3 (N.D.Tex. Apr. 30, 2008) (unpublished). It is therefore respectfully recommended that the ALJ's determination is not supported by substantial evidence, and does not comply with relevant law.

### E. The ALJ Fulfilled His Duty to Develop the Record.

■ Finally, plaintiff claims that the ALJ erroneously failed to develop the record. (D.E. 21, at 19). The Fifth Circuit imposes a duty on an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995). "If the ALJ does not satisfy his duty, his decision is not substantially justified." *Id.* Additionally, an ALJ has a "heightened duty to explore for relevant facts when the claimant is proceeding *pro se.* . . . " *Bowling,* 36 F.3d at 433.

The Supreme Court has explained, however, that "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *see also Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir.2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.") (citing § 404.1512(c)). Plaintiff was represented by counsel, and could have obtained any relevant records.

■ The Fifth Circuit has determined that trial courts should not reverse or remand determinations because documents are missing where the record contains enough evidence for the ALJ to make a determination. *See Torres,* 48 F.3d at 893–94 (claimant failed to demonstrate that lost evidence affected the ALJ's ability to render an informed decision); *see also Brady v. Apfel,* 41 F.Supp.2d 659, 668 (E.D.Tex.1999) (rejecting argument that incomplete administrative record is *per se* denial of due process; affirming denial where documents would be of *de minimis* value and were irrelevant); *Hawkins v. Barnhart,* 356 F.Supp.2d 359, 365–66 (S.D.N.Y.2005) (upholding denial of benefits where ALJ's decision supported by substantial evidence even absent missing documents). Agency records furnished to a court are adequate for due process purposes unless they do not permit meaningful judicial review of the adjudication process. *Brady,* 41 F.Supp.2d at 668 (citing *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 594, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980); *Torres,* 48 F.3d at 887). The 610–page record in this case provides a clear picture of the process whereby the ALJ reached his determination. Viewing the facts in the light most favorable to the plaintiff, it is respectfully recommended that the Commissioner's decision complies with relevant legal standards and is supported by substantial evidence.

Furthermore, plaintiff has not shown what evidence he would have introduced, or how the ALJ's failure to obtain it has prejudiced any substantial right. *See Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir.2007) (" 'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.' ") (quoting *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). Therefore, it is respectfully recommended that this claim is without merit.

## V. RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that plaintiff's motion for summary judgment, (D.E. 20), be granted with respect to his claims that the ALJ improperly rejected Dr. Ramirez's medical opinions tending to show disability, that the ALJ did not determine plaintiff's credibility pursuant to the applicable law, and that the ALJ erroneously failed to make a finding that he was able to maintain employment. It is further respectfully recommended that his motion be denied with respect to his claims that the ALJ erred in: (1) applying res judicata; (2) not finding him disabled under the grid rules; (3) considering his failure to seek treatment as an adverse credibility factor without finding that his condition responded to treatment; (4) determining he was capable of light exertion; (5) relying on the vocational expert's testimony that the jobs described involved only average stress; (6) failing to incorporate his moderate limitation in social functioning into his question to the vocational expert;[8] and (7) failing to complete the record.

It is also respectfully recommended that defendant's cross-motion for summary judgment, (D.E. 18), be granted with respect to the ALJ's application of *res judicata,* his determination that plaintiff was capable of light exertion, and plaintiff's waiver of objection to the ALJ's hypothetical, and denied in all other respects. Finally, it is respectfully recommended that this matter be remanded for further proceedings consistent with this memorandum and recommendation.

Respectfully submitted this 11th day of June 2008.

---

**8.** Although plaintiff has waived objection to this error, as a practical matter the ALJ's decision on remand may be incomplete without vocational expert testimony that plaintiff's limitations in social functioning do not prevent him from maintaining employment, either alone or in combination with other recognized impairments.